RODNEY MILLING CO. v. UNITED
STATES.

No. 46483.

Court of Claims.

Feb. 2, 1948.

Temple W. Seay, of Washington, D. C. (Phil D. Morelock, of Washington, D. C., and Joseph A. Hoskins, of Kansas City, Mo., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen., (Andrew D. Sharpe and Helen R. Carloss, both of Washington, D. C., on the brief), for defendant.

Plaintiff brought this suit under Section 128 of the Internal Revenue Code, Section 157, Revenue Act of October 21, 1942, 26 U.S.C.A. Int.Rev.Code, § 128, to recover an overpayment of tax for the fiscal year ending May 31, 1942, less deficiencies for the fiscal years 1934 and 1935, which it has consented in writing to pay.

The only question presented is whether or not plaintiff is precluded from recovering the overpayment by Treasury Regulations 103, Sec. 19–128–1, and a written agreement signed under the provisions of Section 506 of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 950.

### Special Findings of Fact

1. The plaintiff is a Delaware corporation, maintaining its principal office and place of business at Kansas City, Missouri. Plaintiff kept its books and filed returns on the accrual basis of accounting and for the fiscal year ending May 31.

2. The plaintiff engaged in the flour milling business, was a first domestic processor under the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq., and, as such, paid processing taxes aggregating $1,703,690.68 for the period beginning July 9, 1933, to and including April 30, 1935.

3. The Agricultural Adjustment Act was declared unconstitutional January 6, 1936, United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. Accordingly, the Congress enacted into law as a part of the Revenue Act of 1936, Title VII of that Act, § 902 et seq., 26 U.S.C.A. Int.Rev.Acts, page 960 et seq., entitled, "Refunds of Amounts Collected Under the Agricultural Adjustment Act." At the same time, as a part of that same Revenue Act, Congress enacted Title III, § 501 et seq., 26 U.S.C.A. Int.Rev.Acts, page 944 et seq., entitled, "Tax on Unjust Enrichment."

4. After the enactment of the Revenue Act of 1936, plaintiff duly filed claims for refund of processing and floor stocks taxes paid by it under the Agricultural Adjustment Act pursuant to the provisions of Title VII of the Revenue Act of 1936, in the respective amounts of $521,587.10 and $14,442.93. Plaintiff also filed unjust enrichment tax returns for the fiscal years ending May 31, 1935, May 31, 1936, and May 31, 1937. Tentative deficiencies in unjust enrichment tax for these three years were proposed by the Commissioner of Internal Revenue. Thereafter various conferences were held by the officials of the Bureau of Internal Revenue and plaintiff, resulting in a compromise of the claims of the respective parties for the tax liability for floor stocks and processing taxes and also the liability for the unjust enrichment taxes.

March 30, 1942, the plaintiff received a letter signed by Timothy C. Mooney, Deputy Commissioner, as follows:

"Reference is made to the closing agreement under section 506 of the Revenue Act of 1936, wherein it is agreed that the total liability of Rodney Milling Company for tax, penalty, and interest under the provisions of Title III of the Revenue Act of 1936 for taxable years ended prior to June 1, 1937, and the total amount with interest thereon allowable to Rodney Milling Company as a refund of amounts paid as tax under the Agricultural Adjustment Act as amended shall be finally settled (except in case of fraud, malfeasance, or misrepresentation of a material fact) by the payment of $50,521.68 by Rodney Milling Company.

"It was further agreed that such agreement shall be without force or effect until properly executed by all parties to the agreement and shall be without force or effect unless the Commissioner of Internal Revenue affixes his signature thereto on or before March 31, 1942. The agreement was accepted by the Commissioner of Internal Revenue on March 27, 1942. There is enclosed a copy of the closing agreement under section 506 of the Revenue Act of 1936 for your files."

5. The "Closing Agreement," signed for the plaintiff by its vice president and secretary on January 27, 1942, which is referred to in the foregoing communication, was finally consummated by signature of Guy T. Helvering, Commissioner of Internal Revenue, on March 27, 1942, in accordance with its terms. That agreement provides:

"Closing Agreement under Section 506

"Revenue Act of 1936

"(Titles III and VII—Revenue Act of 1936)

"This agreement, made in duplicate under and in pursuance of section 506 of the Revenue Act of 1936, by and between Rodney Milling Company, a taxpayer located at Kansas City, Missouri, and the Commissioner of Internal Revenue, Witnesseth:

"Whereas, the Commissioner of Internal Revenue has determined that the taxpayer is liable for tax imposed under Title III of the Revenue Act of 1936, for taxable years ended prior to June 1, 1937; and

"Whereas, the taxpayer has filed a claim or claims for refund of amounts paid as tax under the Agricultural Adjustment Act, as amended;

"Now therefore, it is agreed between the taxpayer and the Commissioner of Internal Revenue that the total liability of the taxpayer for tax, penalty, and interest under the provisions of Title III of the Revenue Act of 1936, for the said taxable years, and the total amount with interest thereon, allowable to the taxpayer as a refund of amounts paid as tax under the Agricultural Adjustment Act, as amended, shall be finally settled (except in case of fraud, malfeasance, or misrepresentation of a material fact) by the payment of Fifty Thousand Five Hundred Twenty One and 68/100 Dollars ($50,521.68) by the taxpayer.

"This agreement shall be without force or effect until properly executed by all parties to this agreement, and shall be without force or effect unless the Commissioner affixes his signature hereto on or before March 31, 1942."

Plaintiff duly paid the amount of $50,-521.68 set forth in the aforesaid agreement.

6. The plaintiff duly executed the following document dated January 27, 1942:

"Reference is made to the Closing Agreement under Section 506 of the Revenue Act of 1936, executed by the undersigned taxpayer on Jan. 27, 1942.

"In consideration of the acceptance by the Commissioner of the closing agreement described above the taxpayer agrees for the purpose of income and excess-profits tax determinations, that the net amount specified therein is determined as follows:

| | | |
|---|---:|---:|
| Unjust enrichment tax | | $104,842.39 |
| Interest on unjust enrichment tax to Jan. 15, 1942 | 31,831.01 | |
| | | $136,673.40 |
| Less: Title VII claim allowance | 59,478.92 | |
| Interest on Title VII claim allowance to Jan. 15, 1942 | 26,672.80 | |
| | | 86,151.72 |
| Net amount specified in agreement | | 50,521.68" |

7. January 27, 1942, the plaintiff also executed and lodged with the Commissioner of Internal Revenue a document, Form 1267, reading as follows:

"In consideration of the allowance by the Commissioner of Internal Revenue as a deduction from gross income or as cost of goods sold for income tax purposes under Title I of the appropriate Revenue Acts, for the taxable years ended May 31, 1934, and May 31, 1935, of the amounts disallowed as deductions or proposed to be disallowed as deductions for the reason that claims were filed under Title VII of the Revenue Act of 1936, the undersigned taxpayer agrees to include in gross income in income tax returns under existing income and profits tax acts or corresponding provisions of future income and profits tax acts, for the year or years received or accrued, depending upon the method of accounting employed, any and all amounts paid as taxes under the provisions of the Agricultural

Adjustment Act subsequently refunded or credited."

8. The amount of $50,521.68 agreed to as a settlement under Title III and Title VII of the Revenue Act of 1936, and as provided in the aforesaid agreement of settlement, was computed as follows:

"(c) Sums paid as processing taxes imposed by the Agricultural Adjustment Act, claimed as a deduction on the return and disallowed to the extent of $265,619.15 the amount claimed as a refund of processing taxes paid, for the reason that the taxing provisions of the Act, under which the tax-

### RODNEY MILLING COMPANY, KANSAS CITY, MISSOURI

*Computation of net settlement of Title III and Title VII of the Revenue Act of 1936 under Section 506*

| | Years Ended May 31— | | | Total |
|---|---|---|---|---|
| | 1935 | 1936 | 1937 | |
| Unpaid processing tax.............. | $91,010.25 | $485,055.60 | ............... | $576,065.85 |
| Tax in inventory, May 31, 1935..... | (1,980.30) | 1,980.30 | ............... | ............... |
| Total ........................... | 89,029.95 | 487,035.90 | ............... | 576,065.85 |
| Less: Tax in inventory, Jan. 6, 1936 | ............... | 5,596.28 | ............... | 5,596.28 |
| Remainder ...................... | 89,029.95 | 481,439.62 | ............... | 570,469.57 |
| Add: Reimbursements from vendors | ............... | ............... | $4,560.00 | 4,560.00 |
| Total ........................... | 89,029.95 | 481,439.62 | 4,560.00 | 575,029.57 |
| Less: Reimbursements to vendees | 31,878.25 | 357,212.94 | ............... | 389,091.19 |
| Remainder ...................... | 57,151.70 | 124,226.68 | 4,560.00 | 185,938.38 |
| Less: Expenses allowed .......... | 2,522.47 | 13,640.55 | ............... | 16,163.02 |
| Net Title III income .............. | 54,629.23 | 110,586.13 | 4,560.00 | 169,775.36 |
| Tax at 80% ..................... | 43,703.38 | 88,468.90 | 3,648.00 | 135,820.28 |
| Less: Income tax credit.......... | 10,242.98 | 20,734.91 | None | 30,977.89 |
| Net Title III tax .................. | 33,460.40 | 67,733.99 | 3,648.00 | 104,842.39 |
| Interest: Dec. 15, 1936 to Jan. 15, 1942 (30½%) ......................... | 10,205.42 | 20,658.87 | ............... | 30,864.29 |
| Aug. 15, 1937, to Jan. 15, 1942 (26½%) ......................... | ............... | ............... | 966.72 | 966.72 |
| | 43,665.82 | 88,392.86 | 4,614.72 | 136,673.40 |
| Less: Title VII refund ........... | ............... | ............... | 59,478.92 | |
| Interest to Jan. 15, 1942 ........ | ............... | ............... | 26,672.80 | |
| | | | | 86,151.72 |
| Net tax payable ..................... | ............... | ............... | ............... | 50,521.68 |

9. Plaintiff also filed income and excess profits tax returns for the fiscal years ending May 31, 1935, and May 31, 1936. In its income and profits tax return for 1935, plaintiff had deducted an amount of $265,-619.15 as processing taxes. A deficiency was proposed for that year arising in part from the disallowance of the above mentioned amount as a deduction. In a 90-day letter dated June 4, 1940, advising plaintiff of deficiencies in income tax for 1935 of $55,900.49 and a deficiency in excess profiits tax of $20,327.45, the following statement appears:

es were imposed, were declared invalid by the United States Supreme Court. Pursuant to the provisions of Section 903, Revenue Act of 1936, as amended by Section 405, Revenue Act of 1939, [7 U.S.C.A. § 645], you have filed a claim for refund of a portion of the sum paid and have refused to agree in writing to include in gross income, in the year or years received, or accrued, any refunds which you may have received with respect thereto."

A deficiency in income and profits tax for 1936 was also included in the 90-day letter in the amount of $77,622.83; income

tax, and $22,134.91, profits tax. The plaintiff, on August 22, 1940, filed a petition with the United States Board of Tax Appeals, Docket No. 104333, seeking a redetermination of the deficiencies for 1935 and 1936. The case before the Board was settled by stipulation of the parties, the stipulation reading as follows:

"It is hereby stipulated and agreed that there is a deficiency in Federal income tax due from this petitioner for the taxable year ended May 31, 1935, in the amount of $15,439.88; that there is a deficiency in Federal excess-profits tax due from this petitioner for the taxable year ended May 31, 1935, in the amount of $5,614.50; that there is a deficiency in Federal income tax due from this petitioner for the taxable year ended May 31, 1936, in the amount of $61,848.32; that there is a deficiency in Federal excess-profits tax due from this petitioner for the taxable year ended May 31, 1936, in the amount of $16,934.84; and that the Board may enter its decision accordingly.

"It is further stipulated and agreed that effective upon the entry of the Board's decision, petitioner waives the restrictions, if any, contained in the applicable internal revenue act or acts, on the assessment and collection of said deficiencies, plus interest as provided by law."

This stipulation was filed with the Board May 22, 1942, and a decision of the Board in accordance therewith was entered May 23, 1942.

10. One of the considerations which induced the Bureau officials to agree to enter into the agreement on Form 506, referred to above, and also to agree to the stipulation as to the deficiencies in income and profits taxes for the fiscal years 1935 and 1936, was the fact that the plaintiff had agreed to include any refund of processing taxes in income for later years. The Bureau officials would not approve either of these settlements until plaintiff agreed to execute the Form 1267 referred to in finding 7.

11. Plaintiff filed income and declared value excess profits tax return for the fiscal year ended May 31, 1942, showing income and declared value excess profits tax due of $90,706.20, which was paid in equal installments on August 15, 1942, November 16, 1942, February 16, 1943 and April 22, 1943. A deficiency in income and declared value excess profits tax of $1,141.24 was assessed and was paid, together with interest of $158.39 on December 11, 1944.

In this return plaintiff included the amount of $59,478.92 referred to in finding 6.

12. In pursuance of the provisions of Section 128, Internal Revenue Code, and Section 29.128-1 of Regulations 111, promulgated thereunder, the plaintiff addressed the following letter to the Commissioner of Internal Revenue, Attention: Income Tax Unit, Records Division, Washington, D. C., dated April 26, 1943, and lodged with him the original and one copy of Form 1289, "Election and Consent relative to Recovery of Unconstitutional Federal Taxes":

"We have attached in duplicate (one original and one photostat copy) form 1289 "Election and Consent relative to recovery of Unconstitutional Federal Taxes" for filing in connection with a claim for refund, Form 843, filed with the Collector of Internal Revenue, Kansas City, Missouri, in the amount of $21,712.94 covering the taxable year ended May 31, 1942.

"If there is any further information you may desire, we shall be pleased to furnish it."

The Form 1289, entitled, "Election and Consent relative to Recovery of Unconstitutional Federal Taxes," dated April 24, 1943, forwarded with its letter of April 26, 1943, reads:

"Pursuant to the provisions of section 128(a) of the Internal Revenue Code notice is hereby given that Rodney Milling Company, a taxpayer of 1550 West 29th Street, Kansas City, Missouri, elects to treat as not having been allowable the deductions(s) allowed in prior taxable year(s) for taxes imposed by the United States which have been held to be unconstitutional, to the extent of the recovery of such taxes as set forth below:

"Description of tax recovered-Processing tax on wheat processed under AAA as amended

"Amount of tax recovered $59,478.92; Date of recovery, March 27, 1942.

"Taxable year(s) in which paid or accrued May 31, 1934; May 31, 1935

."Taxable year(s) for which deduction(s) was (were) allowed:

"Year 1934 Amount $29,190.24; Year 1935 Amount $30,288.68; Year, Amount $                    .

"Pursuant to the provisions of section 128(b) of the Internal Revenue Code, the above-named taxpayer consents (1) to the Commissioner's treating the deduction(s) or portion(s) thereof allowed in a prior year(s) with respect to the unconstitutional tax as not allowable for such year(s) and (2) to the assessment by the Commissioner of Internal Revenue, within the period subsequently to be agreed upon, in respect of the taxable year(s) for which the deduction(s) was (were) allowable, any deficiency, together with interest thereon as provided by law, resulting from disallowance of the deduction(s), or portion(s) thereof, even though the statutory period for the assessment of any such deficiency may have expired prior to the filing of this consent."

This election and consent was disallowed by the Commissioner.

13. On April 14, 1943, plaintiff duly filed a claim for refund of declared value excess profits tax, normal tax, and surtax in the amount of $21,712.94, plus interest for the taxable period June 1, 1941 to May 31, 1942, and as grounds therefor stated:

"The taxpayer contends that any amounts of alleged refund under Title VII of.taxes does not represent income for the year 1942 or any other year. The taxpayer cites from the case of Commissioner of Internal Revenue, Petitioner, v. The Security Flour Mills Company, Respondent. The Security Flour Mills Company, Petitioner, v. Commissioner of Internal Revenue, Respondent, United States Circuit Court of Appeals, Tenth Circuit. Nos. 2556, 2589, January Term, 1943, March 6, 1943 [135 F.2d 165]:

" 'The question calls for little discussion. Section 506 is a clear mandate that an agreement entered into under its provisions shall be and constitute a final settlement of the liability for the tax and of the claim for refund, unless there was fraud, malfeasance, or misrepresentation of a material fact in connection with its execution. There is no suggestion that any lack of good faith occurred in connection with the execution of this agreement. The contract was a final settlement. And in view of the plain language of the statute, we fail to see any warrant for going behind it and restoring to income for 1935 any item or sum which was taken into consideration in reaching the settlement.'

"The taxpayer further contends that under this decision the Form 1267 signed January 27, 1942, relating to the inclusion of the amounts shown, an alleged refund under Title VII is null and void and should be disregarded."

"Alternate Proposal

" If the taxpayer's first proposal is not allowed then the taxpayer submits an alternate proposal of claim in the amount of $10,560.65.

"The taxpayer makes this application for refund under Section 128 of The Internal Revenue Code as amended by the Revenue Act of 1942, and any other relief provisions or amendments thereto. This alternate proposal represents the taxpayer's election and consent to treat the deduction allowed in a prior taxable year for the unconstitutional tax as not having been allowable for such taxable year. The alleged tax recovered was processing tax paid on wheat processed under the Agricultural Adjustment Act, as amended. The alleged tax was refunded by offsetting the alleged refund against the tax imposed under the provisions of Title III of the Revenue Act of 1936, in connection with a closing agreement under Section 506, Revenue Act of 1936, dated March 27, 1942.

"The processing tax was paid during the fiscal years 1934 and 1935 and the portion thereof of the unconstitutional tax as applicable to these years is set forth in the accompanying schedules. The taxpayer consents to the Commissioner assessing in respect of the taxable year for which the deduction was allowed, any deficiency, together with interest thereon as provided by law, resulting from disallowance of the deduction to the extent of the amount of $59,478.-

92 that was allegedly refunded or any portion thereof and for this purpose only, even though the statutory period for the assessment of any such deficiency may have expired prior to the filing of this consent.

"The alternate proposal is not in conflict with Form 1267 signed January 27, 1942, as this agreement reads 'the undersigned taxpayer agrees to include in gross income in income tax returns under existing income and profits tax acts or *corresponding provisions of future income and profits tax acts.*' The Revenue Act of 1942 was enacted into law sometime after this agreement was signed and Section 128 therefor [sic] is a provision of a future income and profits tax act.

"The taxpayer respectfully requests that any amounts determined to be overassessments under this claim be refunded, in accordance with laws and regulations of the Treasury Department, together with interest thereon as provided by law."

There was also attached to such claim a calculation of the amount sought thereby, namely $21,712.94, also the alternate amount referred to in the said claim of $10,560.65, as follows:

**Year 1942:**

| | |
|---|---|
| Alleged refund under Title VII $59,478.92 | |
| Normal tax @ 24% | $14,274.94 |
| Surtax @ 7% | 4,163.52 |
| Declared value excess profits tax @ 6.6% on $49,613.39 | 3,274.48 |
| Total overassessment, year 1942 | 21,712.94 |

**Year 1934:**

| | |
|---|---|
| Portion of alleged refund under Title VII applicable to year 1934 | $29,190.24 |
| Income tax @ 13¾% | 4,013.66 |
| Excess profits tax @ 5% | 1,459.51 |
| Total deficiency, year 1934 | 5,473.17 |

**Year 1935:**

| | |
|---|---|
| Portion of alleged refund under Title VII applicable to year 1934 | $30,288.68 |
| Income tax @ 13¾% | 4,164.69 |
| Excess profits tax @ 5% | 1,514.43 |
| Total deficiency, year 1935 | 5,679.12 |

**Summary:**

| | | |
|---|---|---|
| Overassessment, year 1942 | | 21,712.94 |
| Less: | | |
| Deficiency, year 1934 | $5,473.17 | |
| Deficiency, year 1935 | 5,679.12 | |
| | | 11,152.29 |
| Net reduction in taxes | | 10,560.65 |

14. Plaintiff's claim for refund of $21,712.94 was rejected and disallowed by letter dated May 18, 1945.

Temple W. Seay, of Washington, D. C. (Phil D. Morlock, of Washington, D. C., and Joseph A. Hoskins, of Kansas City, Mo., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Sewall Key, Acting Asst. Atty. Gen. (Andrew D. Sharpe and Helen R. Carloss, both of Washington, D. C., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

LITTLETON, Judge.

The question involved in this tax case is whether plaintiff is entitled to the benefits of Section 128 of the Internal Revenue Code, added by Section 157 of the Revenue Act of 1942, 56 Stat. 798, 856, 26 U.S.C.A. Int.Rev.Code, § 128, which provides for an election method in the taxability of recovered unconstitutional Federal taxes.

Plaintiff is engaged in the flour milling business and during the period July 9, 1933, to and including April 30, 1935, it paid processing taxes under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. In its income tax returns for the fiscal year ended May 31, 1934, and May 31, 1935, it took processing taxes as deductions from gross income. After that act was declared unconstitutional by the Supreme Court on January 6, 1936, Congress enacted the Revenue Act of 1936, 49 Stat. 1648, which provided in Title VII thereof, § 901 et seq., 26 U.S.C.A. Int.Rev.Acts, page 960 et seq., for the refund of amounts collected under the Agricultural Adjustment Act and also by Title III of the same act, § 501 et seq., 26 U.S.C.A. Int.Rev.Acts, at page 944 et seq., for a tax on unjust enrichment on account of the unconstitutional processing taxes which had been collected and as to which plaintiff had received or would receive a benefit through deductions from gross income for income tax purposes, through refund or otherwise. Thereafter plaintiff duly filed claims for refund of processing taxes. It also filed unjust enrich-

ment tax returns for the fiscal years ending May 31, 1935, to May 31, 1937, inclusive, in connection with which the Commissioner later determined tentative deficiencies in the unjust enrichment tax for those three years. After conferences between the officials of the Bureau of Internal Revenue and counsel for plaintiff, a compromise was reached of the claims of the respective parties as to the amount of the liability for processing taxes and also the liability for unjust enrichment taxes. Pursuant to Section 506 of the Revenue Act of 1936, 49 Stat. 1739, 26 U.S.C.A. Int.Rev.Acts, page 950, a written agreement was executed by plaintiff on January 27, 1942, embodying the terms of the compromise, under which it was agreed that plaintiff would pay a net amount of $50,521.68 in satisfaction of its liability for the unjust enrichment tax after the allowance of credit for the refund of processing taxes. On the same day that agreement was entered into, January 27, 1942, plaintiff executed a further document in which it agreed that such net amount was determined by deducting from a total unjust enrichment tax and interest of $136,-673.40 a refund of processing taxes and interest of $86,151.72 (which was made up of processing tax in the amount of $59,478.92 and interest of $26,672.80). On the same day, plaintiff executed a still further document in which it agreed to include in its income tax return for the year of recovery the processing taxes which were credited against the unjust enrichment tax in the agreement referred to above. The Commissioner accepted the agreement on March 27, 1942, which made effective the credit or recovery of the $59,478.92 of processing taxes on that date. In accordance with its agreement, plaintiff included the amount of such credit in its income tax return for the fiscal year ended May 31, 1942, and paid the tax shown due thereon.

After the enactment of the Revenue Act of 1942, which became effective October 21, 1942, plaintiff, on April 14, 1943, filed a claim for refund of $21,712.94 for the fiscal year ended May 31, 1942, in which it sought the recovery of the entire amount of tax paid on account of the inclusion in that return of the refund of processing taxes of

$59,478.92 on the ground that such amount did not represent income for 1942. In the alternative, it asked for the refund of $10,-560.65 on the ground that it was entitled to the benefit of the application of Section 128 of the Internal Revenue Code.

Pursuant to Section 128, plaintiff, on April 26, 1943 filed with the Commissioner the executed form required by the Commissioner's regulations under that statute setting out its election and consent relative to the treatment of the item of $59,478.92. The Commissioner disallowed the claim in its entirety.

Plaintiff's petition here is along the same lines as the claim for refund, that is, it seeks recovery of the total amount of tax, and in the alternative the benefits of Section 128. However, it has now abandoned the claim for the larger amount, thus leaving for consideration the single question of the applicability of Section 128 which reads as follows:

"Income (excluding interest) attributable to the recovery during the taxable year of a tax imposed by the United States which has been held unconstitutional, and in respect of which a deduction was allowed in a prior taxable year may be excluded from gross income for the taxable year, and the deduction allowed in respect thereof in such prior taxable year treated as not having been allowable, if—

"(a) The taxpayer elects in writing (at such time and in such manner as may be prescribed by regulations prescribed by the Commissioner with the approval of the Secretary) to treat such deduction as not having been allowable for such prior taxable year, and

"(b) The taxpayer consents in writing to the assessment, within such period as may be agreed upon, of any deficiencies resulting from such treatment, even though the statutory period for the assessment of any such deficiency had expired prior to the filing of such consent."

The facts with respect to income and deductions and as to the action required in meeting the prescribed conditions clearly bring plaintiff within the above statute and permit recovery unless it is precluded from

such recovery by certain facts and conditions which we will discuss later. Taking section 128 as it is written and applying its provisions to the facts in this case, we find that the income with which we are concerned ($59,478.92) represents an unconstitutional tax which plaintiff recovered by way of credit in the fiscal year ended May 31, 1942, and that when those taxes were paid in the fiscal years ended May 31, 1934, and 1935, deductions were taken therefor in the income tax returns for those years. Where that condition exists the statute provides that the amount of the recovery income may be excluded in the year of recovery, provided two conditions are met, namely, that the taxpayer file notice of his election at such time and in such manner as the Commissioner may prescribe by his regulations, and that the taxpayer consent in writing to an assessment of deficiencies on account of disallowance of the deductions which were taken in the years when the unconstitutional tax was taken as a deduction. Plaintiff duly filed such notice of election and consent. Without more, plaintiff has satisfied every requirement of the statute.

Defendant opposes recovery, however, on a number of grounds, the first of which is that such recovery is prohibited by the Commissioner's regulations. The Commissioner, in Treasury Regulations 103, in prescribing the terms and conditions under which recoveries may be had under Section 128, set out the following situations under which recovery could not be had:

"Where a taxpayer's liability for income tax with respect to the deduction or the recovery or with respect to the tax liability for the year of the deduction or recovery has been finally determined by a written agreement or by a decision of the Board of Tax Appeals or of any court, the taxpayer will not be entitled to the benefits of section 128 or of this section."

■ Clearly, if that provision is valid, plaintiff is precluded from recovery because a written agreement was certainly entered into with respect to the amounts of the taxes with which we are concerned and also, for one of the years for which a deduction

was taken, a petition was filed with the Tax Court. However, we are of the opinion that such provision of the regulations is not authorized either by the statute in question or by the Commissioner's general authority to make regulations. The only provision in Section 128 with respect to regulations is that the Commissioner may prescribe the time and manner in which the taxpayer shall make his election and that condition has been fully complied with by plaintiff. In addition, the Commissioner, of course, has general authority to make regulations and those regulations have the force and effect of law if they are reasonable and come within the law with respect to which they are issued. Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; and Commissioner v. Wheeler, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166. However, a regulation which does more than seek to carry out the intent of Congress and thereby alter or amend the law is without force and effect. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528. The statute provides in plain terms that where unconstitutional taxes are recovered in a later year and a taxpayer has received the benefit from an income tax deduction in an earlier year, the amount of recovery may be excluded from income, provided the taxpayer so elects as required by the statute, and, in addition, consents to the assessment of the deficiency or deficiencies for the year or years where the original benefit was had from the deduction. There is nothing in the statute which would justify placing these additional limitations on the right of recovery.

■ [Defendant, however, says in effect that plaintiff, as a matter of law, is not entitled to recover for the very reasons which are set out in the regulations and that therefore the regulations are reasonable and should be sustained. The first of these reasons is that a written agreement was entered into on account of the unconstitutional tax with which we are concerned and that to allow recovery in this case would be in violation of that agreement. We do not so

read the agreement and the effect of the applicability of this statute thereon. Plaintiff does not here question the amounts agreed upon. Under the agreement the amount of the unjust enrichment tax for which plaintiff was liable was determined and the amount of the recovery of processing taxes to which plaintiff was entitled was also determined. These matters to which the agreement of March 27 related have not been changed. One consideration in connection with the agreement was that the amount of the recoverable processing taxes for which plaintiff was given credit in the agreement in reduction of its unjust enrichment tax, would be included in taxable income for income tax purposes in the year of recovery. Plaintiff carried out that portion of the agreement. However, after all of these events had occurred, an entirely new statute was enacted which gave to plaintiff a right which it did not theretofore have, namely, a right of election with respect to the treatment for income tax purposes of the recovered processing taxes. The written agreement which plaintiff and the Commissioner entered into was provided for by a specific section (506) of the same act (Revenue Act of 1936) which provided for the taxation of unjust enrichment in Title III and the recovery of unconstitutional taxes in Title VII. That statute provides that an agreement thereunder shall be a final settlement of the "liability for tax and the claim or claims for refund covered by such agreement." The allowance of recovery by plaintiff under Section 128 in this proceeding, will in no manner change the liability for tax nor the refund covered by the agreement. Since all of these provisions were in the Revenue Act of 1936 when Congress added Section 128 to the Internal Revenue Code by the Revenue Act of 1942 which dealt with the subject matter of these provisions, it is reasonable to conclude that had Congress intended to limit the right of recovery in the manner provided in the regulations it would have done so in express terms. Since it did not do so and since the statute is clear and unambiguous, we can not agree that such limitation was either intended or that plaintiff, because of the agreement, is precluded from pursuing its new right of action thereunder.

The further objection is made and also provided in the regulations that recovery cannot be had by reason of the finality of a decision by the Tax Court. At or about the same time when the closing agreement was under consideration, plaintiff had appealed to the Tax Court on account of deficiencies determined by the Commissioner for the fiscal years ended May 31, 1935, and 1936. These deficiencies had resulted in part from the disallowance by the Commissioner of deductions claimed by plaintiff of processing taxes paid for those years. These petitions were settled by a stipulation of the parties in which deficiencies were determined for each year and a decision was entered thereon by the Court in accordance therewith. One of the considerations which induced the Commissioner to enter into the stipulation was that plaintiff had agreed in the agreement heretofore mentioned, to include the recoverable processing taxes in taxable income for the fiscal year ended May 31, 1942, which plaintiff did as we have shown. The allowance of recovery here will not affect the finality of the Tax Court's decision with respect to anything which was there determined. This suit is not for recovery of any tax for 1935 but rather the suit is for 1942. All the statute does by setting up a new cause of action of which plaintiff is taking advantage is to say that the amount to which plaintiff would otherwise be entitled for 1942 on account of the exclusion of the refund of processing taxes from income, should in effect be reduced on account of any benefit which plaintiff theretofore received from taking these taxes as a deduction in prior years. This is accomplished by requiring that plaintiff consent to the assessment of deficiencies for the years where the benefits were derived even though the statute of limitations bars such assessment. The objection of defendant in this respect would not be applicable to 1934, where no petition was filed, and also we do not think it is valid as to 1935 for the reason that it is a new right given by this statute in order to reduce the amount which would otherwise be recoverable when suit is brought for the later year and thus prevent what would otherwise be an inequitable adjustment and give to a taxpayer a double benefit.

The further question remains as to the amount of the judgment which should be entered. The matter is not discussed by the parties other than a request by plaintiff, to which no objection is made, that judgment be entered in its favor for $10,560.65, which, under its computation, represents the difference between the tax on the excluded overpayment of $59,478.92 for 1942, that is, $21,712.94, and the total of the two deficiencies for 1934 and 1935 of $11,152.29 due to the disallowance of corresponding deductions in those years ($29,190.24 in 1934 and $30,288.68 in 1935).

While subsection (b) of Section 128, supra, refers to "assessment" of any resulting deficiencies, it is clear that the purpose of this subsection was to exact of the taxpayer, as a condition to the treatment authorized by the statute, in written consent that he would pay any deficiency resulting from such election and treatment even though the bar of the statute on assessment and collection of such deficiencies had fallen. The statute, as is usual in internal revenue laws, is couched in administrative language, but it has long been recognized by such laws, and this court has long recognized in cases before it, that liability for taxes may be paid or satisfied without the necessity of a formal administrative assessment. This court has jurisdiction to determine all claims which the Government may have against a claimant and to determine and apply all legal offsets and credits. Although not formally set up by a pleading, the Government has a claim under the statute against plaintiff for the "resulting deficiencies" for 1934 and 1935, which plaintiff has consented in writing to pay, and the defendant should have judgment for these deficiencies.

In view of the foregoing, entry of judgment in favor of plaintiff for the overpayment for the fiscal year ended May 31, 1942, on account of the exclusion from the income of that year of the recovered processing tax of $59,478.92, will be suspended pending a submission by the parties of a computation of the amount of such overpayment and the amount of the resulting deficiencies for the fiscal years ended May 31, 1934, and May 31, 1935. It is so ordered.