tute findings of fact and conclusions of law except to the extent that the parties choose to submit further specific ones to formalize those embodied herein.

Since I am not satisfied by the preponderance of the evidence that Graham-Paige realized a profit on its sales of 155,000 shares of the common stock of Kaiser-Frazer, I find for Graham-Paige and deny the relief which plaintiff seeks.

**J. Gilmore FLETCHER, D. Watson Fletcher, and John L. Hafner.**

v.

**The UNITED STATES.**

No. 271-52.

United States Court of Claims.

June 7, 1955.

Ewing Laporte, Washington, D. C., for plaintiffs.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen., H. Brian Holland, for defendant. Andrew D. Sharp and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs, as trustees in liquidation and dissolution of Ridgefield Manufacturing Corporation, hereinafter called Ridgefield, sue to recover income and excess profits taxes, and interest thereon, paid by them for Ridgefield for the fiscal year ending July 31, 1946.

In December 1946 the plaintiffs filed Ridgefield's returns for the year in question. The returns showed an income tax liability of $46,549.56 and no excess profits tax liability. The reported income tax liability was paid, partly before and the balance at the time of the filing of the return. These payments were made to the Collector of Internal Revenue for the Fifth District of New Jersey.

On July 28, 1947, the plaintiffs delivered four checks, amounting in all to $9,246.90 to the Collector for the Third Collection District of New York. Again on October 3, 1947, the plaintiffs delivered two checks amounting to $1,326.37 to the same Collector. All of these checks were drawn on a Ridgefield account, and none of them indicated what they were for. Not having any tax account to which to apply them, the New York Collector deposited all these six checks, amounting to $10,573.27 in an

account designated "Miscellaneous Account."

On April 29, 1949, a statutory deficiency notice was issued to the plaintiffs, asserting a deficiency against Ridgefield, for the fiscal year 1946 of $12,204.10 in income tax and $9,951.79 in excess profits tax. On May 16, 1949, the plaintiffs filed a petition with the Tax Court, 16 T.C. 273, of the United States for redetermination of these asserted deficiencies. After trial the Tax Court issued its opinion on February 2, 1951. The Government then filed a detailed computation which was made up in compliance with the Tax Court's opinion, and the plaintiffs endorsed upon the computation their agreement that the computation was in accordance with the Tax Court's opinion. The computation showed an income tax liability of $59,315.58 and an excess profits tax liability of $3,075.62. It applied the payments of $46,549.56, made at or before the filing of the return, and $6,461.82 out of one of the "Miscellaneous Account" checks, to the income tax liability, and that left an unpaid balance of $6,304.20. It applied the balance of that one of the miscellaneous account checks out of which $6,461.82 had already been applied to income tax, and another miscellaneous account check for $1,251.29, a total of $3,369.43 against the excess profits tax deficiency. That sum exceeded the excess profits tax deficiency by $293.81.

Upon the presentation to the Tax Court of the agreed computation, the court, on March 20, 1951, entered its decision which was that there was a deficiency in income tax in the amount of $6,304.20, and an overpayment in excess profits tax of $293.81. The decision was not appealed, and became final. The Commissioner of Internal Revenue thereupon assessed the taxes as shown by the computation, together with interest. He later corrected the computation of interest, and also seems to have credited the plaintiffs with four small checks paid into the miscellaneous account but which were not counted in the computation which preceded the Tax Court's de-

cision. The plaintiffs paid the amount assessed for income tax, and were refunded the overpayment of excess profits tax. They filed a timely claim for refund. No refund has been made, and they have brought this suit.

The plaintiffs' suit is grounded upon their assertion that the Tax Court decided that they owed only $6,304.20 in taxes, in addition to the $46,549.56 which they had paid when they filed their original return in 1946. Therefore, they say, the $10,573.27 which the Commissioner of Internal Revenue had in the miscellaneous fund, and kept, and the more than $7,000 which he collected from them after the Tax Court decision, overpaid their taxes by the amount of $10,389.41 for which they sue.

The Tax Court undoubtedly took into consideration the payments which the plaintiffs had made into the miscellaneous fund when it determined the amount of their deficiency in income tax. The computation, made after the issuance of the Tax Court's opinion, and agreed to by both parties, showed all of these payments except four small ones, and computed the deficit after giving credit for the payments. The Tax Court's determination of an overpayment of $293.81 of excess profits tax would have been most remarkable if the court had considered only the payments made with the returns, since the plaintiffs' excess profits tax return had shown no tax due, and none was paid with it. So the plaintiffs are, in effect, asserting that whatever may have been the intention of the Tax Court, what it said had the legal effect which the plaintiffs insist upon.

We see no merit in this argument. The decision of a court, like any other piece of human composition, means what the writers of it intend it to mean, if the words used will bear a meaning consistent with that intention. Here the decision of the Tax Court expressly referred to the agreed computation, and purported to embody the computation in a judgment.

If the legal judgment of the Tax Court was something different from what it said, and meant to say, the reason must be in some legal doctrine which controls and determines the legal effect of the Tax Court's decisions. The plaintiffs state the legal questions involved in this litigation in three different ways, but each of the statements assumes that the Government is contending that the Tax Court's decision was wrong, and is asking us to disregard it. This reiterated assumption is unfounded, hence, if there is a legal question worthy of consideration, we must ourselves find it and state it. The plaintiffs point out that, at the time of the Tax Court's decision in 1951, the Commissioner of Internal Revenue had not yet applied the miscellaneous account deposits to pay any assessed tax. They say that it was then too late to assess and collect the tax. If it were the law that a taxpayer who had put money in the hands of the Government's tax collector, presumably to pay taxes, could, although he owed the Government taxes, demand the return of that money if the Government failed to assess the taxes within the statutory time, it would seem that the plaintiffs' right to do so in this case was foreclosed by the final decision of the Tax Court that they still owed taxes after receiving credit for the money paid in before assessment. This court held in Rodney Milling Co. v. United States, 75 F.Supp. 707, 111 Ct.Cl. 625, that deficiencies, though never assessed, may be collected by set off in a suit in this court. Section 271(a) of the Internal Revenue Code of 1939, as amended by section 14 (a) of the Individual Income Tax Act of 1944, c. 210, 58 Stat. 231, 245, 26 U.S. C.A. § 271(a), in defining a deficiency, expressly requires the Government to credit the taxpayer with amounts collected without assessment. The plaintiffs cite Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535, where it was held that money deposited with the collector in 1934 to cover whatever deficiencies the future might define, but which was not appropriated to

a tax obligation until 1938, could be recovered by the taxpayer within the statutory period after the latter date, upon a showing that he did not owe the tax. For the purpose there in question, the tax was not "paid" until 1938. But that does not mean that a taxpayer, actually owing taxes, could demand the return of his money leaving his taxes unpaid.

The plaintiffs' petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

George G. McMURTRY

v.

The UNITED STATES.

No. 514–53.

United States Court of Claims.

June 7, 1955.

