**SCM CORPORATION**

v.

**The UNITED STATES.**

**No. 102–78.**

United States Court of Claims.

March 21, 1979.

---

Louis W. Brydges, Waukegan, Ill., attorney of record, for plaintiff. Thomas A. Morris, Jr., and Brydges, Riseborough & Morris, Waukegan, Ill., of counsel.

David S. Eisenberg, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before NICHOLS, BENNETT and SMITH, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

This case comes before the court on the parties' cross-motions for summary judgment. The petition alleges the breach of an oral contract entered into between plaintiff and the Department of the Army in settlement of a claim for equitable adjustment under a contract. Defendant's answer asserts a counterclaim in the nature of a setoff for amounts allegedly due on another contract between the parties. We conclude that plaintiff's claim is without merit, as is the counterclaim. Therefore they must be dismissed.

Plaintiff, Kleinschmidt Division of SCM Corporation, entered into a negotiated fixed-price contract, No. DAAB05–71–C–3415 (contract No. 3415), with the Department of the Army on June 30, 1971, for the manufacture of teletypewriter sets and related software. Approximately 1 year later, a disagreement arose over the extent to which the plaintiff was required to incorporate certain lubrication data into contract drawings without charge to the defendant. Plaintiff appealed the final decision of the contracting officer to the Armed Services Board of Contract Appeals (ASBCA) on November 14, 1972, which docketed the case as No. 17936. It was dismissed without prejudice on April 3, 1975.

On March 26, 1973, plaintiff sought an equitable adjustment under the contract in the amount of $122,301.76 for the alleged late and unreasonable review by the defendant of procedures submitted by plaintiff involving inspection of its products and for increased testing costs due to claimed overly stringent Government testing requirements. In a telephone call of January 6, 1976, the contracting officer, Maj. Robert B. Mulholland, Jr., came to an apparent understanding with Mr. Harry S. Gaples, president of Kleinschmidt Division, to tender $55,000 in full payment of the equitable adjustment. The substance of the understanding was memorialized that day by Major Mulholland in a memorandum for the files, as follows:

2. Final settlement was reached at $55,-000.00 including settlement on the small claim presently before the board and waiver of any other claims the contractor may have against this contract aside from those which are directly associated with the Government initiated defective pricing action.

3. Mr. Gaples asked how soon could he expect execution of the Supplemental Agreement and when he could expect payment. I advised him that I would try to get the modification for his signature to him as soon as possible, * * *. The settlement was confirmed by Major Mulholland by letter dated February 12, 1976.[1] Thereafter, several letters were exchanged respecting the question of when payment would be made. There was a problem of lack of funds in the agency, which caused the delay, but it was finally resolved and a written modification of the contract (standard form 30) was sent to plaintiff for its signature. Plaintiff refused to sign the modification on the grounds that it did not properly represent the understanding reached on January 6, 1976. On December 2, 1977, plaintiff submitted its own draft of the understanding. This proposal also included an additional claim for interest. By letter dated January 9, 1978, the contracting officer informed plaintiff that plaintiff's proposed modification was under consideration. On March 17, 1978, plaintiff filed suit in this court, alleging breach of the January 6, 1976, settlement and claiming payment of $55,000.

The parties hotly dispute the nature and scope of the settlement. Plaintiff contends that this dispute involves only the proper interpretation of an agreement as depicted by Major Mulholland's memorandum, that its interpretation is fully supported, and that the agreement was a fully enforceable oral contract which defendant breached. Defendant responds that the controversy as to the terms of the contract demonstrates that there was no "meeting of the minds," that the telephone negotiations did not constitute an enforceable legal contract, and that, in any event, the controversy constitutes a dispute as to fact under the contract which requires primary resolution by the administrative agency. Without deciding the other issues, we conclude that the purported settlement reached January 6, 1976, was not a contract.

■ The purported agreement proposed to settle a dispute arising under a negotiated fixed-price supply contract which was subject to the Armed Services Procurement Regulations (ASPRs). Settlements are fully covered in the ASPRs. Thus, a settlement agreement changing the price the Government pays for goods is a *contract modification* under 32 C.F.R. § 1–201.2 (1975), as follows:

> *Contract Modification* means any written alteration in the * * * price * * or other contract provisions of an existing contract, whether accomplished by unilateral action in accordance with a contract provision, or by mutual action of the parties to the contract. It includes (i) bilateral actions such as supplemental agreements, * * *.

A settlement of the contract dispute negotiated by the parties is a *supplemental agreement* as defined in 32 C.F.R. § 1–201.18 (1975), as follows:

> *Supplemental Agreement* means any contract modification which is accomplished by the mutual action of the parties. (See 16–103.)

Negotiated settlements are *contracts* under 32 C.F.R. § 1–201.4 (1975), as follows:

> *Contracts* means all types of agreements and orders for the procurement of supplies or services. * * * It also includes supplemental agreements with respect to any of the foregoing.

Thus, the regulations view a settlement as a separate *written* contract altering the rights and liabilities of the parties.

Section 1–201.18 refers to 32 C.F.R. § 16–103 (1975) which prescribes the proper form to be used for supplemental agreements. Section 16–103 provides as follows:

> Funds have been requested for the settlement but they have not been approved because of potentially deficit appropriation accounts involved. As soon as funds are approved, I will forward a Supplemental Agreement to obligate them."

---

1. "Reference is made to Contract No. DAAB05–71–C–3415, our telephone conversation of 6 January 1976 and your letter of 7 January 1976.

"This letter confirms our settlement for your request for Equitable Adjustment on the referenced contract for the sum of $55,000.00.

16–103 Amendment of Solicitation/Modification of Contract (Standard Form 30).

(a) *General.* This paragraph prescribes a single form for * * * (ii) modification of contracts * * *.

(b) *Conditions for Use.* This form shall be used for:

\* \* \* \* \* \*

(v) supplemental agreements as defined in 1–201.18; and

\* \* \* \* \* \*

The regulations provided that *"[s]hall* is imperative." 32 C.F.R. § 1–201.16 (1975). There can be no doubt that the regulations require that settlements are written contracts to be executed on standard form 30.

■ Parties are presumed to know and required to be cognizant of the governing regulations. Nonetheless, plaintiff was well aware of the fact that the oral agreement contemplated the bilateral execution of a written document. In Major Mulholland's memorandum, which plaintiff relies on as accurately setting out the substance of the negotiation and settlement, it was reported that "Mr. Gaples asked how soon could he expect execution of the Supplemental Agreement and when he could expect payment." In Major Mulholland's letter to plaintiff of February 12, 1976, it was stated, "[a]s soon as funds are approved, I will forward a Supplemental Agreement to obligate them." *See* note 1 *supra.* It cannot be contested that the telephone conversation contemplated the finalization of the settlement by the execution of a written contract on standard form 30 which was the condition precedent for the payment of Government funds. It was standard form 30, containing the Government's view of the terms of the contract, that was delivered to plaintiff and which plaintiff refused to execute.

■ Oral understandings which contemplate the finalization of the legal obligations in a written form are not contracts in themselves. When legal obligations between the parties *will be deferred* until the time when a written document is executed,

there will not be a contract until that time. *See* Restatement of Contracts § 26 (1932). *See also* Corbin on Contracts § 30 (1963). Under the regulations, Government funds were not obligated until the execution of standard form 30. The parties were well aware of the fact that only the written contract modification could finalize their agreement. No commitments in the oral understanding to act in any way by either party were to be consummated until execution of the supplemental agreement. Whether the parties had reached a clear understanding of the terms of the settlement makes no difference and we specifically intimate no decision on that issue. We thus conclude that neither party was bound by its negotiations until standard form 30 was executed. This interpretation of the understanding and intent of the parties is supported by the actions of plaintiff in later seeking inclusion in the contract of an additional term for interest. Thus, we conclude that the representations made by telephone on January 6, 1976, did not constitute a contract.

We note that this case does not squarely present the question of the enforceability of oral contracts with the Government. Instead, the case deals with the problem of what effect the parties' clear understanding of the procedures and regulations governing settlements had on their intent to consummate a binding contract. It should be kept in mind that oral understandings must first be contracts before they are enforceable. In this case, we simply hold that the understanding between the parties was not a contract and cannot sustain a breach of contract action in this court.

■ Defendant's counterclaim, as set out in its brief, is restricted to a claim for a setoff against any proceeds recovered by plaintiff in this suit. Since plaintiff receives nothing, there is nothing to which a setoff can apply. Defendant also seeks summary judgment on the question of whether plaintiff is entitled to interest on the settlement amount and to attorney's fees and costs incurred in defending a defective pricing action on contract No. 3415

(ASBCA No. 20550). The motion as to the interest question has been rendered moot by our resolution of the case. As to the latter motion, plaintiff has never asserted such claims either before this court or elsewhere, but has simply contended that these potential claims were not waived by the purported settlement. As to such claims, defendant seeks a declaratory judgment which is not within the jurisdiction of the court in this case. *See United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

For these reasons, we deny plaintiff's motion for summary judgment and grant defendant's cross-motion for summary judgment insofar as it pertains to the enforceability of the alleged contract of settlement. The other issues raised by defendant are, as indicated, moot or denied. Defendant's counterclaim is dismissed. The petition is dismissed.