**Ben R. SHIPPEN d/b/a Assurance Company**

v.

**The UNITED STATES.**

**No. 281–79C.**

United States Court of Claims.

June 17, 1981.

Denver C. Snuffer, Jr., Pleasant Grove, Utah, for plaintiff; William L. Nixon, Salt Lake City, Utah, atty. of record.

Thomas W. B. Porter, with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and NICHOLS and KASHIWA, Judges.

FRIEDMAN, Chief Judge:

The question before us, raised by the plaintiff's motion to dismiss the second counterclaim, is whether we have jurisdiction to entertain a counterclaim that seeks only a declaratory judgment. We answer that question negatively, and therefore dismiss the counterclaim.

## I.

This controversy arose out of a contract between the plaintiff and the United States Army, under which the plaintiff agreed to perform construction work. According to the plaintiff, the Department of Labor informed it that fabrication work the plaintiff proposed to perform would not be covered by the minimum wage requirements of the Davis-Bacon Act, 40 U.S.C. § 276a, and the plaintiff advised the Army's project inspector of the Labor Department's view before commencing the fabrication work. After the work was completed, however, the Army informed the plaintiff that in the Army's view the Davis-Bacon Act covered the work.

The Army subsequently withheld, from amounts due the plaintiff under another contract, approximately $45,000. The Army asserted that this was the amount by which the plaintiff had underpaid its employees because of the failure to pay the Davis-Bacon wage rates on the fabrication work. Under the Davis-Bacon Act, the Army withheld this amount in order to enable the Comptroller General to pay it to the employees who had been underpaid. 40 U.S.C. §§ 276a, 276a–2.

The Army also withheld from the plaintiff $5,210, based upon the plaintiff's alleged failure to pay the overtime rates that the Contract Work Hours and Safety Standards Act required. 40 U.S.C. § 328. The latter violation resulted because, according to the Comptroller General, the overtime "was based on a lower basic rate of pay than required by the Davis-Bacon Act." The $5,210 constituted liquidated damages that the contract and the Work Hours Act specified for violation of that Act, and will be referred to as the "liquidated damages claim." (The $45,000 will be referred to as the "Davis-Bacon claim.")

The contracting officer ruled against the plaintiff on the Davis-Bacon claim. The plaintiff appealed that ruling to the Armed Services Board of Contract Appeals. At the request of the plaintiff, however, the Board dismissed the appeal without prejudice, apparently because of a provision in the contract exempting disputes concerning the applicability of the Davis-Bacon Act from the contract's disputes clause and the parties' understanding that the plaintiff would seek instead a ruling from the Comptroller General on the Davis-Bacon claim. The plaintiff requested such a ruling.

The plaintiff also filed the present suit in this court seeking recovery only on the liquidated damages claim and not on the Davis-Bacon claim.

In a second counterclaim filed in this suit, the government sought "judgment for the full amount of wages under the Davis-Bacon Act for distribution to the employees concerned." Shortly after that counterclaim was filed, the Comptroller General declined to consider the Davis-Bacon claim. He stated that in deciding the liquidated damages claim in the present suit, "it appears likely that the question of the applicability of the Davis-Bacon Act to the work performed under the contract will be a matter which the court must consider" and that "[i]t is the policy of our Office not to decide matters where, as in the present case, the material issues involved are likely to be disposed of in litigation by a court of competent jurisdiction. . . ."

## II.

The government's second counterclaim states that, in violation of the Davis-Bacon Act,

> plaintiff failed to pay a portion of its employees the wages required by the Davis-Bacon Act, 40 U.S.C. [§ 276a] (1976). The amount of wages thus underpaid exceeds the sum of $45,000. Defendant, consequently, is entitled to judgment for the full amount of wages under the Davis-Bacon Act for distribution to the employees concerned.

The government recognized, both in its brief and several times in oral argument, that its counterclaim seeks solely a declaratory judgment. Indeed, the government hardly could do otherwise. The government has withheld the $45,000 covering the Davis-Bacon claim from amounts due the plaintiff under another contract. Even if the government were to prevail on its counterclaim, it would not be entitled to receive anything additional from the plaintiff.

The only relief the government seeks in its counterclaim is a declaration that it "is entitled to" retain, as against the plaintiff, the $45,000 it now holds. In the words of the Declaratory Judgment Act, 28 U.S.C. § 2201, the government is asking us to "declare the rights and other legal relations of" itself and the plaintiff.

In *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), the Supreme Court held that this court has no jurisdiction to grant a declaratory judgment against the United States. The Supreme Court pointed out that since the creation of this court in 1855, "its jurisdiction has been limited to money claims against the United States Government." *Id.* at 2–3, 89 S.Ct. at 1501–1502. The concluding sentence of the opinion stated: "In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments." *Id.* at 5, 89 S.Ct. at 1503. In rejecting the contention that authority to issue declaratory judgments could be found in the broad language of the Declaratory Judgment Act that "any court of the United States" may issue declaratory judgments, the Supreme Court pointed out that "cases seeking relief other than money damages from the Court of Claims have never been 'within its jurisdiction.'" *Id.* at 4, 89 S.Ct. at 1502.

Section 1503 of title 28 gives this court jurisdiction "to render judgment upon any set-off or demand by the United States against any plaintiff in such court." There is no reason to believe that Congress intended to give us jurisdiction to enter a declaratory judgment on a counterclaim when we have no authority to enter such judgment on the main claim. Section 1503, like the Tucker Act itself, gives us jurisdiction to adjudicate only money claims. It authorizes us to adjudicate claims by the United States against the plaintiff for monies up to the amount of the claim that therefore reduce or eliminate any recovery by the plaintiff (a set-off), or exceed or exist independently of the claim and therefore warrant a money judgment in favor of the United States against the plaintiff (a demand). In either of those situations, the United States is seeking the affirmative relief of a judgment for money against the plaintiff. The

government's request for a declaratory judgment on its second counterclaim, on which it has already obtained the money involved in the claim, comes within neither of these categories, and we do not have jurisdiction to entertain it.

The government argues that the "cornerstone of the [Supreme Court's] analysis" in *King* was its conclusion that there was no showing that Congress had waived the sovereign immunity of the United States to permit this court to render declaratory judgments against the United States. The government then states that this consideration is inapplicable where, as here, the declaratory judgment is sought by, rather than against, the United States.

The Supreme Court's reference to the lack of any waiver of sovereign immunity, however, was made in rejecting the contention that the provision in the Declaratory Judgment Act that "any court of the United States" may render such a judgment, covers this court. The Supreme Court stated that the "first answer" to this contention was, as noted above, that "cases seeking relief other than money damages" have never been within our jurisdiction. 395 U.S. at 4, 89 S.Ct. at 1502. As we have explained, we think that the basic rationale of the Supreme Court in *King* was that this court, throughout its long history, never was given jurisdiction over claims other than those for money damages.

What little authority there is on the question supports our conclusion. In *SCM Corp. v. United States*, 219 Ct.Cl. 459, 595 F.2d 595 (1979), the government filed a counterclaim asserting a set-off. The government also moved for summary judgment on the question whether the plaintiff was entitled to interest on a settlement involved in a case and to attorneys' fees and costs in defending a claim against it under a contract involved in the case. We held for the defendant on the merits, which mooted the set-off and interest issues. With respect to the attorneys' fees and costs issues, the court pointed out that the plaintiff had not asserted such claims directly but merely had contended that they were not waived

by the settlement. Citing *United States v. King, supra,* we stated: "As to such claims, defendant seeks a declaratory judgment which is not within the jurisdiction of the court in this case." 219 Ct.Cl. at 465, 595 F.2d at 599.

The government points to the statement in *Cherry Cotton Mills v. United States*, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946), that the purpose of the predecessor to 28 U.S.C. § 1503 was "to permit the Government, when sued in the Court of Claims, to have determined in a single suit all questions which involved mutual obligations between the Government and a claimant against it." 327 U.S. at 539, 66 S.Ct. at 730. It also cites *Jankowitz v. United States*, 209 Ct.Cl. 489, 533 F.2d 538 (1976), where we stated that the intent of section 1503 "is to permit the Government to have all controversies between it and the plaintiff litigated in one forum, once and for all." 209 Ct.Cl. at 505 n.10, 533 F.2d at 547 n.10. These general statements, however, must be read in the context of the issue in those cases, which was whether we had authority to entertain a particular counterclaim for monetary relief. They do not warrant interpreting section 1503 as covering a counterclaim seeking only declaratory relief.

The government argues that the very breadth of our counterclaim jurisdiction under 28 U.S.C. § 1503 shows that that jurisdiction covers declaratory judgments. As noted in the preceding paragraph, our counterclaim jurisdiction is broad. "[T]he Government may set up a counterclaim even though (a) it does not arise out of the transaction or occurrence that is the subject matter of the petition and (b) it states a claim of a type (*e. g.* tort) of which we would not have jurisdiction if sought to be maintained by a plaintiff." *Continental Management, Inc. v. United States*, 208 Ct.Cl. 501, 506 n.2, 527 F.2d 613, 616 n.2 (1975). The fact that we have broad jurisdiction over counterclaims for money that arise in a wide variety of situations, however, does not establish that that jurisdiction also extends to claims in which no

money is sought. Despite the breadth of our counterclaim jurisdiction, we cannot conclude, as the government argues, that the counterclaim for declaratory relief that the government here asserts constitutes a "demand" over which we have jurisdiction under 28 U.S.C. § 1503.

At oral argument the plaintiff acknowledged that it could have included the Davis-Bacon claim in its petition. It stated that it made a conscious choice not to do so but instead to seek a ruling from the Comptroller General on that claim. The plaintiff also recognized that a decision by us rejecting the liquidated damages claim might bar the plaintiff from subsequently litigating the merits of the Davis-Bacon claim, either here or before the Comptroller General, under the principle that *res judicata* may in some circumstances bar relitigation not only of issues previously adjudicated, but also of issues that could have been litigated in the earlier proceedings. *See Container Transport International, Inc. v. United States,* 199 Ct.Cl. 713, 468 F.2d 926 (1972). The plaintiff has chosen not to litigate the Davis-Bacon claim in this case. If that course ultimately should result in a loss on that claim, the plaintiff has only itself to blame.

### CONCLUSION

The plaintiff's motion to dismiss the second counterclaim is granted, and that counterclaim is dismissed. The case is remanded to the Trial Division for further proceedings on the remaining issues.

KASHIWA, Judge, dissenting:

The majority, it seems to me, decides this case by simply fastening a label of "declaratory judgment" on the second counterclaim. Since *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), speaks ill of declaratory judgments when sought by plaintiffs against the sovereign, it must follow, says the majority, that we cannot entertain a "declaratory judgment" when sought by the Government. Yet the sovereign is immune from suit save its consent, *e. g., United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941),

and even a cursory reading discloses that proposition to be the *sine qua non* of the *King* decision. Plaintiff Shippen is no sovereign, and I perceive little difficulty in reading the expansive language of 28 U.S.C. § 1503 differently than the Supreme Court read the 28 U.S.C. § 1491 consent to suit in *King.* Those are, after all, different sections, applicable to different parties.

The proper analysis, I think, is that the Government here has a "demand" within the meaning of 28 U.S.C. § 1503. Without benefit of citation, the majority asserts that this statutory term must be limited to claims for money. Nowhere, however, does the legislative history of 28 U.S.C. § 1503 or its predecessors (including the first such provision, § 3 of the Act of March 3, 1863, ch. 92, 12 Stat. 765) indicate that the term "demand" is to be so narrowly read. Lord Coke wrote in his Institutes (a source with which Congress in 1863 was undoubtedly familiar) that "demand" was among the most comprehensive terms in the law. American courts have long accorded the term a similar scope. *E. g., Helliker v. Bram,* 277 S.W.2d 556, 558 (Mo.1955); *Burns v. Drake,* 157 Kan. 367, 371, 139 P.2d 386, 389 (1943); *Talley v. Brown,* 146 Iowa 360, 363, 125 N.W. 248, 249 (1910); *Henry v. Board of County Commissioners,* 41 Colo. 267, 269, 92 P. 697, 697 (1907); *In re Denny,* 2 Hill [N.Y.] 220, 223 (1842); *White v. Hunt,* 6 N.J.L. 415, 417 (1798). Congress, had it chosen to limit the broad term "demand" in the manner the majority now does, could have modified "demand" by the addition of "monetary" or by the substitution of the less comprehensive term "debt," see *Sands v. Codwise,* 4 Am.Dec. 305, 318 (N.Y.1808); *Henry v. Board, supra.* Yet neither was done.

Leaving aside these considerations of statutory construction, 28 U.S.C. § 1503 is a condition limiting the waiver of immunity. That is, a plaintiff must expose himself to the counteractions specified therein to bring suit under 28 U.S.C. § 1491. *McElrath v. United States,* 102 U.S. 426, 440, 26 L.Ed. 189 (1880); *Frantz Equipment Co. v. United States,* 122 Ct.Cl. 622, 631, 105 F.Supp. 490,

496 (1952). Conditions on the waiver must be strictly construed in the sovereign's favor, *see, e. g., Sherwood, supra,* so that the waiver itself is read narrowly. Not surprisingly, 28 U.S.C. § 1503 has long been read expansively to encompass all controversies between the sovereign and plaintiff. *Cherry Cotton Mills, Inc. v. United States,* 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946); *Jankowitz v. United States,* 209 Ct.Cl. 489, 505 n.10, 533 F.2d 538, 547 n.10 (1976); *Scott v. United States,* 173 Ct.Cl. 650, 659, 354 F.2d 292, 297 (1965); *Erie Basin Metal Products, Inc. v. United States,* 123 Ct.Cl. 433, 437–438, 107 F.Supp. 588, 590 (1952); *Rodney Milling Co. v. United States,* 111 Ct.Cl. 625, 642, 75 F.Supp. 707, 717 (1948). Thus, the Government may counterclaim in tort, *see Tennessee Mechanical Institute, Inc. v. United States,* 145 Ct.Cl. 344, 350–351 (1959), or while an identical Government claim is pending in another court, *see Universal Fiberglass Corp. v. United States,* 210 Ct.Cl. 206, 218–219, 537 F.2d 393, 399 (1976), even though 28 U.S.C. §§ 1491 and 1500, respectively, preclude plaintiffs from doing the same. In short, we have heretofore recognized that we as a court

> * * * are not at liberty, by interpretation, to limit or restrict the plain and broad terms of the statute relating to the right of the Government to assert counterclaims and to the jurisdiction of this court to hear and determine such claims. * * * [*Frantz Equipment Co.,* 122 Ct.Cl. at 630, 105 F.Supp. at 495.]

I would, therefore, allow the Government to maintain its second counterclaim. That course would require this ongoing dispute to be resolved in a single forum, rather than piecemeal in scattered fora as the majority opinion may yet require. *See, e. g., Cherry Cotton Mills, supra; Jankowitz, supra; cf. Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962) (Fed.R.Civ.P. 13(a), which requires certain counterclaims to be asserted or lost, is designed to prevent multiplicity of actions and to achieve resolution of all related disputes in a single lawsuit).

To repeat, 28 U.S.C. § 1503 is not 28 U.S.C. § 1491. I dissent.