COOPER REALTY CO., d/b/a The
Cooper Companies, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–619C.

United States Court of Federal Claims.

Aug. 1, 1996.

Mark Vorder–Bruegge, Jr., Memphis, TN, for plaintiff.

Geoffrey C. Cook, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. There are two issues to be resolved: (1) whether the United States Postal Service breached an alleged oral agreement to vacate certain premises approximately nine months prior to the expiration date of a lease extension agreement; and (2) whether claims based on the alleged oral agreement, the terms of which differ from those of the written lease extension, are barred by the parol evidence rule. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. The United States Postal Service (the "USPS") leased certain premises located at 1407 Union Avenue, Memphis, Tennessee, from Cooper Realty Company, d/b/a The Cooper Companies ("plaintiff"), from March 1, 1977, until February 28, 1992, to serve as its Southern Regional headquarters. By letter dated March 22, 1991, the USPS notified plaintiff that Southern Regional postal officials had requested approval for construction of a new office building. This letter also stated that, while the USPS had not chosen plaintiff's building as the location for its new regional headquarters, the USPS in the interim requested a 12–month extension of the current lease.

Subsequently, the USPS and plaintiff entered into discussions concerning the possible extension of the Union Avenue lease. On August 6, 1991, James T. Coe, Director, Office of Real Estate, and the USPS contracting officer, sent a letter to plaintiff's President, Irby Cooper, in which Mr. Coe set forth the USPS' "business deal understanding" that would serve as the basis for extending the Union Avenue lease. Plaintiff asserts that the August 6, 1991 letter did not include all aspects of the "business deal." The pertinent terms of the August 6, 1991 letter state:

Rental rate to be $12.65 per leased square foot inclusive of services provided in the existing lease.

Term to be 24 months beginning March 1, 1992, concurrent with the expiration of the current lease.

A lease extension will be executed between parties using USPS standard lease forms within 30 days from the last signature on this letter of understanding.

This is to be an inclusive "umbrella" agreement resolving all claims and issues between the parties.

The lessor acknowledges that the USPS may not need to occupy the space for the entire period of the lease extension. The USPS acknowledges that the lessor will be using its best efforts to market the space during this period and will reasonably cooperate in such efforts provided postal op-

erations and use of the space are not hindered thereby. Lessor agrees to make an equitable adjustment in rental and terms for any space relinquished by the USPS and leased to others prior to the end of the extension term.

Mr. Cooper signed and returned a copy of the letter as "Agreed To."

On December 2, 1991, plaintiff and the USPS executed three written agreements. Under the terms of the first of these agreements, the USPS extended the Union Avenue lease for two more years, from March 1, 1992, to February 28, 1994. By the second and third agreements, the USPS leased additional space from plaintiff at the Union Avenue address for an identical two-year period.

On December 15, 1993, plaintiff filed a claim with Phillip E. Wilson, Acting Vice President Facilities, USPS asserting that the USPS had breached a verbal agreement to: 1) vacate the Union Avenue premises no later than May 31, 1993; 2) attempt to have the General Services Administration (the "GSA") lease all or part of the premises to another agency; and 3) continue paying rent until the lease's expiration. In support of its claim, plaintiff attached an affidavit from Mr. Coe, which stated:

Ultimately, I was able to negotiate a 24-month extension with the understanding by all parties that the Postal Service was scheduled to vacate the Premises nine (9) months before the expiration of the extended lease (i.e. exit date of May 31, 1993). In addition, I agreed that the Postal Service would

 (a) attempt to get the General Services Administration ("GSA") to lease all or part of the Premises for another agency; and

 (b) continue to pay rent through the end of the lease extension (estimated to be 9 months after the Postal Service vacates the Premises) except with respect to any portion of the Premises

for which the Postal Service or Cooper Realty is able to locate a tenant, in which case rent would be paid on that portion of the space only through the renovation period until the space is occupied by the new tenant.

Affidavit of James T. Coe, Dec. 13, 1993, ¶ 9. Mr. Coe's affidavit also noted that the August 6, 1991 letter did not completely impart the parties' understanding that the USPS would vacate the Union Avenue premises in approximately 15 months and that the USPS would seek to have the GSA lease all, or part, of the premises for another agency. Furthermore, Mr. Coe stated that neither the lease extension agreement nor the August 6, 1991 letter sought to nullify the oral agreement to vacate the Union Avenue premises by May 31, 1993.

On September 14, 1994, USPS Contracting Officer Philip K. Ferrari issued a final decision denying plaintiff's December 15, 1993 claim. Mr. Ferrari's decision noted: "Neither the Agreement nor the [August 6, 1991] Letter refer to any understanding by the parties concerning when the USPS would vacate the Premises except Paragraph 1 of the Agreement." [1] Mr. Ferrari added that the USPS had no contractual obligation with the GSA that would require either the GSA or another government agency to lease the Union Avenue premises. On September 14, 1995, plaintiff filed suit in the United States Court of Federal Claims seeking $1,132,243.70, which represents rent for the nine months that plaintiff had allegedly negotiated to receive while renovating and seeking to re-let the Union Avenue premises.

Defendant moved to dismiss or, in the alternative, for summary judgment on two grounds.[2] First, defendant asserts that, as the alleged oral agreement is contrary to USPS regulations, it is not binding on the Government. Second, defendant contends that claims based on the alleged oral agreement, the terms of which differ from those of the written lease extension, are barred by

---

**1.** Paragraph 1 of the Agreement states that the term of the lease was from March 1, 1992, until February 28, 1994. Mr. Ferrari noted that the USPS had paid plaintiff all the rent due through end of the lease.

**2.** As defendant relies on materials beyond the original pleadings, the court, pursuant to Rule 12(b)(4), will treat the motion as seeking summary judgment. Plaintiff responded to defendant's motion as one for summary judgment.

the parol evidence rule. In response plaintiff argues that there are two separate agreements, the written lease extension and the oral agreement to vacate the premises. Therefore, according to plaintiff, the lease extension complies with the pertinent USPS regulations and the oral understanding, as a different contract, is not affected by the parol evidence rule.

## DISCUSSION

■ Summary judgment is appropriate when there are no disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Defendant's motion properly may intervene and prevent trial if the motion demonstrates that trial would be useless because additional evidence, beyond that available in connection with its motion, could not reasonably be expected to change the result. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 626 (Fed.Cir. 1984). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1); *see also Universal Life Church, Inc. v. United States,* 13 Cl.Ct. 567, 580 (1987) (citing cases), *aff'd,* 862 F.2d 321, 1988 WL 108171 (Fed.Cir.1988) (Table).

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555. As the opponent of summary judgment, plaintiff has been accorded all applicable presumptions and inferences. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574

(Fed.Cir.1984) *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ Contract interpretation is a matter of law resolvable by summary judgment. *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984); *Shearson Lehman Hutton, Inc. v. United States,* 24 Cl.Ct. 770, 773 (1991) ("[I]ssues ... [that] are solely matters of contract interpretation ... are consequently appropriate subjects for summary judgment."), *aff'd,* 983 F.2d 1086, 1992 WL 321020 (Fed.Cir. 1992); *see also Government Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 812 n. 1 (Fed.Cir.1988) ("Contract interpretation is a matter of law and thus is amenable to decision on summary judgment."). When seeking to resolve a question of contract interpretation, the court's primary goal is to ascertain the intent of the contracting parties. *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1185 (Fed.Cir.1988) (citing *S. Williston, A Treatise on the Law of Contracts* § 601 (3d ed. 1961)). To avoid conflicts between provisions within the contract, an agreement should be read as a whole. *Reliance Ins. Co. v. United States,* 931 F.2d 863, 865 (Fed.Cir.1991); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965). While the construction of an unambiguous writing is an appropriate matter for summary judgment, language that is reasonably susceptible to more than one interpretation may be considered ambiguous and thus not appropriate for summary judgment. *Davis v. Chevy Chase Fin. Ltd.,* 667 F.2d 160, 169 (D.C.Cir.1981).

### 1. *Failure to comply with USPS regulations*

Defendant argues that the terms of the alleged oral agreement between the USPS and plaintiff are not binding on the Government because they are contrary to USPS leasing regulations. Plaintiff contends that the oral agreement is a valid contract separate from the lease extensions, so that USPS regulations concerning leases do not control. An examination of the pertinent USPS regulations indicates that plaintiff's position is untenable.

USPS Procurement Manual, § 11.4.1 (Feb. 1, 1992), defines a lease as "any written agreement by which the rights of use and occupancy of real estate are transferred from the owner to the Postal Service for a specified period of time in return for a specified rental amount." USPS Realty Acquisition and Management Handbook, § 314 (Feb. 15, 1991), notes that in order to execute a valid lease extension agreement, the parties must utilize "Form 7415, Lease Extension Agreement (DGS), to extend the provisions of existing lease contracts when the Postal Service cannot occupy proposed new quarters before expiration of the existing lease." Finally, the USPS Procurement Manual, § 6, ¶ 1.6.2(f) (Feb. 1, 1992), defines a contract modification as:

> [a] written alteration in the specifications, delivery point, rate of delivery, contract period, price, quantity, or other provisions of an existing contract, whether made unilaterally under a provision in the contract or bilaterally by mutual agreement of the parties to the contract. It includes such bilateral actions as supplemental agreements, and such unilateral actions as change orders, administrative changes, notices of termination, and exercise of options.

It is evident that the parties sought to, and did, negotiate a lease extension agreement for the Union Avenue premises. In accordance with USPS regulations, the parties executed the December 2, 1991 agreements on USPS Form 7415. The three agreements each state that the term of the lease is from March 1, 1992, to February 28, 1994. The agreements contain no mention of the oral understanding that purported to require the USPS to vacate the Union Avenue premises by May 31, 1993, nine months prior to the expiration date on the lease extension agreement. The agreements do not note an alleged understanding that the GSA would seek to re-let the Union Avenue premises to another government agency.

■ The terms of the oral understanding differ from, and seek to modify, the written terms of the December 2, 1991 lease extension. Consequently, in order to comply with the USPS regulations concerning contract modifications, the oral agreement must have been in writing. *See* USPS Procurement Manual, § 6, ¶ 1.6.2(f). Having failed to comply with the USPS rules and regulations, the oral agreement is not a valid contractual modification. *See Mil–Spec Contractors, Inc. v. United States*, 835 F.2d 865, 869 (Fed.Cir. 1987) (noting basic principle that oral modification ineffective when contract may only be modified in writing); *SCM Corp. v. United States*, 219 Ct.Cl. 459, 464, 595 F.2d 595, 598 (1979) (same).

■ Although the purported agreement failed to comply with USPS regulations concerning contract modifications, plaintiff nevertheless argues that the oral understanding is still valid as a separate contract. However, the United States Court of Claims has noted that: "Oral understandings which contemplate the finalization of the legal obligations in a written form are not contracts in themselves." *SCM Corp.*, 219 Ct.Cl. at 464, 595 F.2d at 598. In this case the oral understanding between plaintiff and the USPS was contingent upon the completion of a lease extension. Until the actual lease extension was finalized, neither party was bound by the terms of the oral understanding. "When legal obligations between the parties ... [are] deferred until the time when a written document is executed, there will not be a contract until that time." *Id.* Consequently, the alleged oral understanding is not a valid contract enforceable against the USPS.

■ While the court gives full credit to the December 13, 1993 affidavit of Mr. Coe, the terms to which Mr. Coe states he agreed are beyond his authority. As plaintiff notes—in addition to mutuality of intent to be bound, definite offer, unconditional acceptance, and consideration—the party seeking to bind the Government to an oral contract must demonstrate "that the officer whose conduct is relied upon had actual authority to bind the Government in contract." *H.F. Allen Orchards*, 749 F.2d at 1575. Mr. Coe, as a contracting officer for the USPS, has the authority to bind the Government to a contract. However, Mr. Coe may not disregard the USPS regulations and attempt to utilize an oral understanding to modify the lease extension agreement when USPS rules ex-

plicitly require that all contract modifications must be in writing. Permitting such an act would be to allow Mr. Coe to exceed his authority. *See New Am. Shipbuilders, Inc. v. United States,* 871 F.2d 1077, 1080 (Fed. Cir.1989).[3]

Oral assurances do not produce a contract implied-in-fact until all the steps have been taken that the agency procedure requires; until then, there is no intent to be bound. Thus, it is irrelevant if the oral assurances emanate from the very official who will have authority at the proper time, to sign the contract or grant.

*Id.* Accordingly, the failure to comply with all agency procedures frustrates plaintiff's claim to an enforceable oral contract.

### 2. *Parol evidence rule*

As an additional ground for summary judgment, defendant contends that the parol evidence rule bars plaintiff's claims based on the alleged oral agreement. The gravamen of defendant's argument is that the alleged oral agreement was reached prior to the execution of the lease extension, which therefore merged all previous negotiations and served to express the parties' final understanding. *See Brawley v. United States,* 96 U.S. (6 Otto) 168, 173, 24 L.Ed. 622 (1877). Plaintiff rejoins that the parol evidence rule is inapplicable because the oral agreement is a contract separate from the written lease extension.

■ As the United States Court of Claims observed, the parol evidence rule is a rule of substantive law, not a rule of evidence. *See David Nassif Assocs. v. United States,* 214 Ct.Cl. 407, 419, 557 F.2d 249, 256 (1977). The parol evidence rule precludes the admission of prior or contemporaneous evidence seeking to add to or vary the terms of a written agreement, when the parties have adopted the written agreement as an expression of their final intent. *Id.* 214 Ct. Cl. at 419–20, 557 F.2d at 256. The parol

evidence rule also prevents the introduction of prior or contemporaneous evidence inconsistent with the written agreement. *Sylvania Elec. Prods., Inc. v. United States,* 198 Ct.Cl. 106, 126, 458 F.2d 994, 1005 (1972); *see also Beta Sys., Inc.,* 838 F.2d at 1183 (noting that court will not receive parol evidence seeking to change the terms of contract that is clear on its face); *Greco v. Dep't of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988) (noting that court will consider parol evidence only when contract is ambiguous). Whether an agreement is integrated, or not, is a question of law that may be resolved through summary judgment. *See Sylvania Elec. Prods.,* 198 Ct.Cl. at 128 n. 9, 458 F.2d at 1006 n. 9.

■ In this case the parties reached the alleged oral understanding prior to the execution of the written lease extension. To avoid the parol evidence rule, the oral agreement can neither add to nor modify the terms of the written lease extension. However, the oral understanding outlined by plaintiff modifies the written terms of the lease extension in that it affects the period of occupancy. The written agreement states that the period of occupancy will be from March 1, 1992, to February 28, 1994. The oral agreement purports to require the USPS to vacate the premises by May 31, 1993, nine months before the written lease extension expires. Seeking to reduce the period of occupancy from 24 months to 15 months is a clear modification. The parol evidence rule therefore is applicable.

■ When construing a contract, the court seeks to ascertain the objective intent of the parties, thus "mental reservations are legally irrelevant." *David Nassif Assocs.,* 214 Ct.Cl. at 422, 557 F.2d at 257. The written lease extension agreement is clear, specific, and unambiguous. As a result, the court must conclude that it constitutes an integrated expression of the parties' final

---

**3.** Assuming, as plaintiff contends, that Mr. Coe was aware of the USPS rules and regulations concerning lease extensions and contract modifications, the result would not differ. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the

Government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). The Government is not bound by the acts of its agents that are beyond those agents' authority.

intent. " 'The written contract merged all previous negotiations, and is presumed, in law, to express the final understanding of the parties. If the contract did not express the true agreement, it was the claimant's folly to have signed it.' " *California Sand & Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 26 (1990), *aff'd,* 937 F.2d 624, 1991 WL 112816 (Fed. Cir.1991) (Table), *cert. denied,* 502 U.S. 1057, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992) (quoting *Brawley,* 96 U.S. at 173). Had plaintiff wanted to ensure that the oral understanding would be enforced against the Government, it should have sought to negotiate the oral terms into the final written agreement. Having failed to do so, the parol evidence rule now bars plaintiff from introducing evidence concerning the oral understanding to vacate the Union Avenue premises by May 31, 1993.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted. The Clerk of the Court shall enter judgment dismissing the complaint.

**IT IS SO ORDERED.**