# United States Court of Appeals for the Federal Circuit

---

**ELLEN P. BULLOCK,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-1248

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00445-NBF, Senior Judge Nancy B. Firestone.

---

Decided: August 26, 2021

---

MICHAEL M. MONSOUR, Kozloff Stoudt, Wyomissing, PA, argued for plaintiff-appellant. Also represented by JEFFREY R. ELLIOTT.

STEVEN C. HOUGH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before NEWMAN, SCHALL, and DYK, *Circuit Judges*.

DYK, *Circuit Judge.*

This case presents the question whether an Equal Employment Opportunity Commission (EEOC) regulation and a United States Department of the Army regulation, both which state that settlement agreements are required to be in writing, preclude enforcement of oral settlement agreements.

Plaintiff Ellen P. Bullock alleges that she entered into an oral settlement agreement with the government to resolve an Equal Employment Opportunity (EEO) claim that she filed with the Army. The government argues that any agreement between the parties, if it exists, is unenforceable due to the EEOC and Army regulations. Without deciding whether the government representative had settlement authority or an agreement existed between the parties, the United States Court of Federal Claims ("Claims Court") held that the EEOC and Army regulations made any agreement unenforceable. We disagree with the Claims Court's interpretation of the two regulations and hold that oral agreements to settle EEOC claims are enforceable. We reverse and remand for a determination of whether the representative of the Army had the necessary authority to enter a settlement agreement and whether the parties in fact reached an agreement.

## BACKGROUND

Ms. Bullock is a civilian employed by the Army at Joint Base Langley-Eustis in southern Virginia as part of the U.S. Army Aviation and Missile Command, Aviation Integration Directorate. In August 2013, following her receipt of a formal letter of reprimand from her supervisor, Ms. Bullock filed an EEO claim with the Army alleging sex discrimination and retaliation. The government investigated Ms. Bullock's complaint and, in July 2014, issued an investigation report, creating a factual record of the events surrounding her claim. At the close of the investigation, Ms.

Bullock requested a hearing before the EEOC. The case was assigned to an EEOC administrative judge.

In June 2015, Ms. Bullock's counsel notified the EEOC administrative judge that the parties jointly requested leave to attempt to reach settlement through the EEOC's mediation program. The EEOC granted the request and assigned another EEOC administrative judge to serve as a mediation judge. During the mediation, Ms. Bullock was represented by her attorney, Jeffrey R. Elliott, and the Army was represented by its management official John L. Shipley, Director of the Aviation Integration Directorate, and attorney Claudia Lynch, a member of the Army's Judge Advocate General's Corps.

On July 23, 2015, Ms. Bullock made a settlement demand, which outlined ten separate conditions for settlement. Seven of these conditions related to nonmonetary demands (i.e., remedies related to the conditions of Ms. Bullock's employment) and three related to monetary demands, including back pay, compensatory damages, and attorneys' fees.

According to Ms. Bullock, the parties reached an agreement as to the seven nonmonetary demands on July 29, 2015. Ms. Bullock also alleges that the parties reached an oral agreement regarding her monetary demands on August 27, 2015. In support, Ms. Bullock points to the fact that, following negotiations, the mediating administrative judge sent an email to Ms. Bullock's counsel on August 27, 2015, stating that "[t]he agency will agree to pay $70,000." J.A. 60. Ms. Bullock's counsel responded to the email, asking "This is settlemt [sic]?" *Id.* at 59. The mediating administrative judge responded, "yes for the parts that were still in dispute," and explained that "[she] could not remember the specific numbers that the agency agreed [on]." *Id.*

The next day, the mediating administrative judge sent an email to the parties asking for the "agency's

understanding of the provisions of the settlement agreement" and then noting that, "[o]nce we confirm that the parties are in complete agreement, the agency can begin work on the written settlement agreement." *Id.* at 63. No written settlement agreement was ever executed, and in late September, the mediating administrative judge stated she learned from Ms. Lynch that the Army "rescinded its settlement offer from August 27th." *Id.* at 65. The mediating administrative judge then notified the EEOC that the parties had reached an impasse.

Ms. Bullock continued to press her claims before the EEOC for over a year. Ultimately, she requested a stay of the EEOC proceeding and filed a breach of contract claim in the Claims Court on March 28, 2017.

In her complaint, Ms. Bullock alleged that the parties reached an oral settlement agreement. The government moved to dismiss Ms. Bullock's complaint for lack of subject-matter jurisdiction, arguing, *inter alia*, that the government representatives participating in the negotiations lacked settlement authority and that oral agreements are not enforceable. Ms. Bullock argued contrary positions.

The Claims Court granted the government's motion and dismissed the complaint because Ms. Lynch, the attorney representing the Army, "lacked the express or implied actual authority to bind the Army . . . and thus there is no settlement agreement to enforce." *Bullock v. United States*, 136 Fed. Cl. 29, 33 (2018). Thereafter, the Claims Court reconsidered its dismissal. *See generally* Order Granting Recons., *Bullock v. United States*, No. 17-cv-445 (Fed. Cl. May 7, 2018), ECF No. 35. In granting reconsideration, "the court f[ound] that Ms. Lynch [government counsel] may have had actual settlement authority when she represented before the tribunal that the government would pay the plaintiff $70,000.00" and concluded that it "ha[d] jurisdiction to hear the case." *Id.* at 3. The court then converted

the motion to dismiss to a motion for summary judgment and ordered further briefing. The court also granted Ms. Bullock limited discovery into whether Ms. Lynch had settlement authority to bind the Army. *Bullock v. United States*, 145 Fed. Cl. 403, 405 (2019).

After consideration of the cross-motions, the Claims Court concluded that "there [was] no genuine dispute of material fact that the Army and Ms. Bullock did not enter into a written agreement." *Id.* at 408. It held that, "[b]ecause a written agreement is required by EEOC and Army regulations, no binding oral agreement existed between the parties." *Id.* As a result, the Claims Court granted summary judgment in the government's favor. The Claims Court did not decide two factual issues raised by Ms. Bullock: whether Ms. Lynch had authority to enter into the purported settlement agreement and whether a settlement agreement was reached between the parties.

Ms. Bullock moved for reconsideration. The Claims Court reaffirmed its earlier ruling and, for the first time, also stated that Ms. Bullock "forfeited" her arguments concerning the enforcement of oral EEO settlement agreements because she "failed to address the applicable Army and EEOC regulations establishing the requirements for a valid EEOC settlement agreement" in her summary judgment briefing. Order Den. Recons. at 4, No. 17-cv-445 (Fed. Cl. Nov. 8, 2019), ECF No. 84.

Ms. Bullock appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Claims Court's grant of summary judgment de novo. *Kimble v. United States*, 991 F.3d 1238, 1242 (Fed. Cir. 2021). The issue on appeal is whether the EEOC regulations and the Army's EEO regulations preclude enforcement of a purported oral agreement. The

Claims Court's interpretation of regulations, like all of its legal determinations, is subject to de novo review. *See Adkins v. United States*, 960 F.3d 1352, 1361 (Fed. Cir. 2020). We think that the Claims Court erred in finding that there was a forfeiture because the issue had been briefed in connection with the motion to dismiss and the Claims Court converted the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Under these circumstances, we see no forfeiture. We accordingly address the merits.

I

At the outset, we note that the government does not claim that any federal statute requires that the agreement be in writing in this case. There is no generally applicable federal statute of frauds, and the government concedes that 31 U.S.C. § 1501 does not bar the claim. Section 1501, as pertinent here, states:

> An amount shall be recorded as an obligation of the United States Government only when supported by documentary evidence of . . . a binding agreement between an agency and another person . . . that is . . . in writing, in a way and form, and for a purpose authorized by law . . . .

31 U.S.C. § 1501(a)(1)(A).

In *United States v. American Renaissance Lines, Inc.*, 494 F.2d 1059 (D.C. Cir. 1974), the District of Columbia Circuit interpreted the statute's predecessor, 31 U.S.C. § 200. That court held that the statute "establish[ed] a requirement that government contracts . . . be in writing, and that contracts which are merely oral are not enforceable." *Id.* at 1062. We have not adopted this view, and we have never interpreted § 1501 to ban the enforcement of oral agreements against the government. *See Narva Harris Constr. Corp. v. United States*, 574 F.2d 508, 510 (Ct. Cl.

1978) (discussing the District of Columbia Circuit's decision in *American Renaissance*). In prior cases enforcing oral agreements, we have assumed that § 1501 does not bar such a claim. *See, e.g.*, *Tiburzi v. Dep't of Just.*, 269 F.3d 1346, 1351–55 (Fed. Cir. 2001) (analyzing the enforcement of oral agreements with the government without discussing § 1501).

Section 1501 does not bar the enforcement of oral agreements. Rather, the provision deals with budget accounting, i.e., the circumstances in which obligations can be recorded in an agency's budget. *Lublin Corp. v. United States*, 84 Fed. Cl. 678, 684–90 (2008) (rejecting the "remarkable claim" that § 1501, "a statute designed to control internal government budgeting, precludes the court from enforcing oral contracts under the Tucker Act" (internal citation omitted)).

## II

In *Tiburzi*, we explained that "our cases make clear that where the parties intend to enter into an oral agreement, it is binding on the parties even if its terms are not embodied in a subsequent written instrument," including where one of the parties is the government, "in the absence of a statute requiring it." 269 F.3d at 1352–53 (quoting 1 Samuel Williston, *Williston on Contracts* § 4.8, at 300–02 (4th ed. 1990)); *see also United States v. Purcell Envelope Co.*, 249 U.S. 313, 319 (1919) (explaining that "formal execution" of a written agreement "[is] not essential to the consummation of [a] contract" with the government). The government nonetheless argues that two regulations make oral EEO settlement agreements unenforceable. We conclude that the two regulations cannot be interpreted as directed to enforceability.

The first regulation relied on by the government is an EEOC regulation directing agencies to put settlement

agreements in writing.  The EEOC's regulation is titled "Voluntary settlement attempts" and states:

> Each agency shall make reasonable efforts to voluntarily settle complaints of discrimination as early as possible in, and throughout, the administrative processing of complaints, including the pre-complaint counseling stage.  Any settlement reached shall be in writing and signed by both parties and shall identify the claims resolved.

29 C.F.R. § 1614.603 (2020).

The Army followed that instruction in its own regulations.  The Army's regulation—the other regulation at issue here—states:  "Any settlement agreement that includes payment of compensatory damages must be in writing." Army Reg. 690-600 ¶ 7-11(g).  And the agreement must set forth "[t]he specific actions to be taken by the Army and the complainant constituting the terms for settlement and time frames for completion." *Id.* ¶ 5-13(g).

Neither regulation states that it renders oral agreements unenforceable.[1]  Rather, the regulations appear to be housekeeping provisions directing agencies (including the Army) to put agreements in writing as a matter of good practice.  In similar situations, the Supreme Court and we have held that housekeeping provisions in statutes and

---

[1]    We have no occasion to answer the question whether the government's interpretation of the regulations should be awarded deference under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), and *Auer v. Robbins*, 519 U.S. 452 (1997), because the government does not argue that its interpretation should be awarded such deference and because we conclude that the meaning of the regulation can be determined without addressing the question of deference.

regulations do not render invalid actions taken in violation of the provisions.

The general principle is that courts should be "most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action." *Brock v. Pierce Cnty.*, 476 U.S. 253, 260 (1986); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) (stating the same); *Brock*, 476 U.S. at 260 (explaining that this principle is "especially" true "when important public rights are at stake"). The Court has applied this general principle to a variety of procedural requirements present in statutes and regulations.

For example, in *Brock*, the Comprehensive Employment and Training Act required that the Secretary of Labor issue a final determination concerning whether a grant recipient misused funds within a 120-day period. 476 U.S. at 255–56. The Court concluded that the agency did not lose jurisdiction to act after the 120-day period because the statute did not "specif[y] a consequence for fail[ing] to comply with the provision" and explained that the deadline in the statute was meant "to spur the Secretary to action, not to limit the scope of his authority." *Id.* at 259, 265. It also rejected an argument that the agency lost the ability to act because the Act's implementing regulation imposed the same 120-day deadline. *Id.* at 265. The Court held that the regulations similarly "d[id] not specify any consequences of a failure to meet that deadline." *Id.*

In *Barnhart*, the statute generally required that the Commissioner of Social Security "shall, before October 1, 1993," make retiree benefit assignments to certain coal industry employees; however, the Commissioner made several assignments after that date. 537 U.S. at 152. The Court held that the Commissioner's untimely assignments were not invalid, explaining that, "if a statute does not specify a consequence for noncompliance with statutory

timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Id.* at 159 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993)).

We have applied this principle in our cases. In *Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005), for example, we concluded that, even assuming that a statutory directive existed requiring that the U.S. International Trade Commission was "required to address . . . the main arguments of the parties in its opinions," the directive was "best read as a housekeeping requirement that is not judicially enforceable." *Id.* at 1355, 1357. In reaching this conclusion, we explained that the requirement did not render noncompliant opinions invalid because the statute did not specify any consequence for the agency's noncompliance. *Id.* at 1357.

Similarly, in *Muller v. Government Printing Office*, 809 F.3d 1375 (Fed. Cir. 2016), we determined that a contractual provision in a collective bargaining agreement that established a four-month deadline to hold an arbitration hearing was "merely a nonbinding housekeeping rule to encourage timely arbitration." *Id.* at 1377. We explained that the four-month hearing deadline was a provision "to encourage prompt handling of the grievance" and did not "stipulate[] any consequences . . . in the event of noncompliance." *Id.* at 1380. With no consequence for failing to observe the four-month deadline, the deadline, we concluded, was "a goal, not a requirement" and was "thus merely a housekeeping rule." *Id.* at 1382.[2]

---

[2]    *See also Kimra Fibres Oy v. United States*, 61 F.3d 866, 871–73 (Fed. Cir. 1995) (concluding that Commerce's failure to timely comply with a regulatory notice

Here, there is also no indication in the regulatory language or the regulatory history that the EEOC or the Army regulations were designed to invalidate oral agreements. Indeed, the EEOC's proposed rule and the final rule are completely silent as to the EEOC's reasoning for the inclusion of the rule. *See generally* 57 Fed. Reg. 12,634 (Apr. 10, 1992) (final rule); 54 Fed. Reg. 45,747 (proposed Oct. 31, 1989). The Army's regulations are similarly silent as to the Army's reasoning.[3]

---

requirement concerning the proposed revocation of anti-dumping orders did not bar Commerce from issuing a notice of proposed revocation past the regulatory deadline); *Stevens v. Dep't of the Air Force*, 395 F. App'x 679, 682 (Fed. Cir. 2010) (holding that a collective bargaining agreement's forty-five-day decision deadline merely "articulated a goal, rather than a mandatory time limit" and was "best read as a housekeeping requirement that [was] not judicially enforceable" (quoting *Timken*, 421 F.3d at 1357)).

[3] Contrary to the Claims Court's decision, *Tiburzi* and the cases that followed it are not limited to oral agreements that are read into the record at a proceeding. Indeed, the cases emphasize that an oral agreement is binding on parties when they so intended to be bound, not that the oral agreement being read into the record made it somehow enforceable. *See Tiburzi*, 269 F.3d at 1352 ("[W]here the parties intend to enter into an oral agreement, it is binding on the parties even if its terms are not embodied in a subsequent written instrument."); *Brown v. Dep't of the Army*, 157 F. App'x 295, 297 (Fed. Cir. 2005) ("Here the proceedings before the administrative judge leave no doubt that the parties intended, and the administrative judge understood, the oral settlement to be binding."); *Gray v. Dep't of Def.*, 91 F. App'x 137, 140 (Fed. Cir.

In sum, neither the EEOC nor the Army regulation provide consequences for failing to make settlement agreements in writing, and as a result, both regulations are best interpreted as housekeeping rules that do not invalidate non-compliant agreements.

## III

The government relies on government contract cases that it argues require a different result. The cases hold that, in the government procurement contract context, where a preexisting written contract is governed by regulations that require a writing to modify the agreement, oral modifications in the form of contract dispute settlements are unenforceable.

For example, in *SCM Corp. v. United States*, 595 F.2d 595 (Ct. Cl. 1979), the then-existing Armed Services Procurement Regulations "require[d] that settlements [be] written contracts . . . executed on standard form 30." *Id.* at 597–98. There, a contracting officer and a contractor orally agreed to settle a procurement contract dispute pursuant to the contract's changes clause by modifying the preexisting procurement contract. *Id.* at 596. Because "[t]he parties were well aware of the fact that only the written contract modification could finalize their agreement," the court held that "neither party was bound by its negotiat[ed oral agreement] until standard form 30 was executed." *Id.* at 598. The court noted that the case "d[id] not squarely present the question of the enforceability of oral contracts with the Government" but explained that it "deal[t] with the problem of what effect the parties' clear understanding

2004) ("Here, Mr. Gray entered into an oral agreement that was entered into the record. . . . The dismissal was on the basis of the oral settlement."). The government does not contend otherwise.

of the procedures and regulations governing settlements had on their intent to consummate a binding contract." *Id.* The court "simply h[eld] that the understanding between the parties was not a contract and cannot sustain a breach of contract action in this court." *Id.*

Similarly, in *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865 (Fed. Cir. 1987), the parties to a government contract orally agreed to modify a preexisting procurement contract pursuant to the contract's changes clause to resolve a dispute stemming from the contract. *Id.* at 866. The court explained that "[t]he Federal Acquisition Regulations [FAR] applicable to the contract . . . require[d] that a modification of a contract be in writing and executed by both parties." *Id.* at 867–68; *see also id.* at 868 (explaining that, under the applicable FAR, "any bilateral modification of a contract is a 'supplemental agreement,' which require[d] the execution of a written standard form 30"). Thus, the court concluded that the oral settlement agreement "was not an effective modification of the contract until both parties had signed a written modification agreement." *Id.* at 869 (relying on *SCM*).

These holdings do not suggest that the regulations here render oral agreements unenforceable. As we have previously explained, *SCM* and *Mil-Spec* are cases controlled by the regulations governing *modifications* of existing contracts, which follow the "longstanding proposition," also present in Article 2 of the Uniform Commercial Code, "that an integrated executory contract excludes modification except by a signed writing." *Tex. Instruments Inc. v. United States*, 922 F.2d 810, 814 (Fed. Cir. 1990) (citing U.C.C. § 2-209(2)). The principles of *SCM* and *Mil-Spec* "simply are inapplicable" to cases in which there is not a provision of an existing procurement contract that is being renegotiated. *Id.* That is the same situation here. The EEOC and Army regulations do not concern modifications to existing contracts but rather new agreements settling EEO

disputes.  They are housekeeping regulations that impose no limitations on the enforceability of agreements.[4]

## IV

The government finally argues that, "because Army and EEOC regulations require exhaustion, Ms. Bullock's failure to do so provides an additional basis to affirm the judgment in favor of the United States." Appellee's Br. 35 n.3.  We disagree.  These regulations provide a remedy before the EEOC for breach of a settlement agreement.  *See* 29 C.F.R. § 1614.504(a) ("The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased."); Army Reg. 690-600 ¶ 5-14(a) (providing the same).  We have previously explained that the requirement for Tucker Act jurisdiction before the Claims Court "normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011).  And we went on to emphasize that "we s[aw] no reason for [29 C.F.R.] § 1614.504(a) [the EEOC regulation] to preclude a suit for money damages in the event of breach that is separate from, or in addition to, the relief the regulation provides." *Id.* at 1316; *see also VanDesande v. United States*, 673 F.3d 1342, 1346 n.2 (Fed. Cir. 2012) (concluding that "the [EEOC] regulations

---

[4]     We also note that the parties during settlement negotiations may indicate that parties will not be bound until a written agreement is executed. *E.g.*, *Tiburzi*, 269 F.3d at 1353 ("Under existing law, an oral agreement is binding absent a showing that the parties 'did not intend to be bound until a written contract was signed.'" (quoting *Sargent v. Dep't of Health & Hum. Servs.*, 229 F.3d 1088, 1090 (Fed. Cir. 2000)).  That is not the situation here.

clearly do not confine enforcement actions to the EEOC, as the Government contends").

## CONCLUSION

Having concluded that the Claims Court erroneously held that oral settlement agreements are unenforceable, we reverse and remand to the Claims Court to decide the two factual issues it did not address in its summary judgment order: first, whether Ms. Lynch, the attorney representing the Army, had authority to enter into the purported agreement and, second, whether there was in fact an agreement between the parties.

**REVERSED AND REMANDED**