**RYSTE & RICAS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–10C.**

United States Court of Federal Claims.

July 30, 2001.

---

James S. DelSordo, Manassas, Virginia, attorney of record for plaintiff.

Janene M. Marasciullo, Washington, D.C., with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### BACKGROUND

This is a government contract matter filed pursuant to the Contract Disputes Act of 1978 ("the CDA"), 41 U.S.C. §§ 601–613, involving plaintiff's ("Ryste" or "plaintiff") renovation of Building 358 ("the site") at the U.S. Army installation, Fort Belvoir, Virginia. Defendant is the United States of America through the Department of Defense ("defendant" or "the DOD"). Under the September 18, 1996 contract ("the contract") between Ryste and the DOD, the total renovations to the site were to cost the government $1,631,000 ("the contract price"), and were to be completed in a 210–day period from October 8, 1996, the date the DOD issued the Notice to Proceed to Ryste.

The dispute in this matter centers around alleged cost overruns incurred by plaintiff in the execution of the contract, which it claims were the result of various delays caused by defendant. Particularly, plaintiff alleges, in its single-count complaint of January 7, 2000, that: (i) defendant "did not process many of Plaintiff's shop drawings and material submittals in a reasonable time. . . ."; (ii) defendant failed to timely respond to plaintiff's Requests for Information; and (iii) defendant "provided to plaintiff specifications and drawings for the Contract" which "were defective." Pl.'s Compl. at 3–4. Because of the foregoing, plaintiff alleges that it and its subcontractors were unreasonably delayed in performing the contract, thus unfairly costing plaintiff $464,842, the amount which is prayed for in the complaint. Id. at 4.

The dispute began on July 8, 1997, when plaintiff sent the DOD's Contracting Officer ("CO") a Request for Equitable Adjustment ("REA"), a document commonly used by government contractors to request and justify extra costs incurred by them in performing a contract. Pursuant to this REA, the total adjustment sought by plaintiff was $464,842. According to plaintiff, the CO "never responded to the REA." Id. at 4. Additionally, in preparing the REA, plaintiff allegedly incurred consulting costs which are included as part of the $464,842 total in its prayer for relief. As a result of the CO's silence regarding the REA, plaintiff filed a certified claim with the CO, pursuant to the CDA, on October 16, 1998, requesting an adjustment to the contract. On December 16, 1998, the CO provided plaintiff with his final decision on the claim, which denied plaintiff all relief. Consequently, plaintiff filed the instant Janu-

ary 2, 2000 action in this court under the CDA.

Shortly thereafter, the parties began discovery. The court notes that the parties' discovery process has been less than amicable up to this point and, as of this writing, we are unsure if they have resolved all outstanding issues regarding such. On May 2, 2001, defendant filed its counterclaim alleging: (i) $219,435 in costs incurred by defendant because of plaintiff's delays in performing the contract; and (ii) $315,469 in unpaid and unrelated tax liabilities allegedly owed by plaintiff to the Internal Revenue Service to be applied as a set-off to any judgment obtained by plaintiff in this instant case.

The court held a status conference, on May 22, 2001, in order to address the following issues: (i) unresolved discovery disputes; and (ii) the propriety of defendant filing of a partial summary judgment motion pursuant to Rule 56 of this court ("RCFC 56"). Additional filings regarding the *request to file* a summary judgment motion were ordered by the court at that time. We note that defendant initially stated, in its June 13, 2000 status report, that "[it] is not aware of any basis upon which to file a dispositive motion." Def.'s Status Rep., June 13, 2000. Given such, this instant order addresses the propriety of now permitting the defendant to file a partial motion for summary judgment.

Defendant avers, in its June 13, 2001 memorandum, that it is desirous of filing a partial summary judgment motion which, it claims, will nevertheless be dispositive of the *entirety* of plaintiff's claim. This is so because, as to the government's counterclaims, defendant stated that it would "walk away" from them (*i.e.,* ask that they be dismissed), if the court grants its summary judgment against plaintiff dismissing the January 7, 2000 complaint, because plaintiff is financially defunct. Status Conf. Tr. at 24. On the other hand, plaintiff forcefully avers, in its June 25, 2001 response, that there are clearly genuine issues of material fact which preclude the propriety of this court granting summary judgment. The following section of this opinion explains the applicable law permitting summary judgment, and the final section renders this court's ultimate decision denying defen-

dant's request to file a partial summary judgment motion.

## DISCUSSION

### I.

RCFC 56, the rule regarding the filing of summary judgment motions in this court, states the following in relevant part:

**(b) For Defending Party.** A party against whom a claim or counterclaim is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in such party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

\*　　\*　　\*　　\*　　\*　　\*

**(f) Form of Affidavits; Further Testimony; Defense Required**.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial....

RCFC 56 (emphasis added). RCFC 56 mirrors, in large part, the same rule of summary judgment applicable in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 56. As such, we find instructive to us the cases of our sister district and appellate courts, in addition to our own court's decisions and those of the Federal Circuit.

"By its very terms, this standard [supra] provides that the mere existence of some alleged factual dispute between the parties will not [ipso facto] defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue of material fact.*" *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). Additionally, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As such, the moving party must show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. In other words, the moving party must prove the negative; *i.e.,* that the nonmovant lacks the evidence to support its case.

"As to materiality, the substantive law will identify which facts are material.... [and] [o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Accordingly, in this government contracts case the court will look very carefully at the nature of the dispute and what facts are relevant to plaintiff's claims.

The ultimate test to be applied herein is, taking the evidence in a light most favorable to the nonmovant plaintiff, whether there is *any* evidence upon which we, as a fact-finder, could properly hold for plaintiff. *Id.* at 251, 106 S.Ct. 2505. On the other hand, if the material facts "may reasonably be resolved in favor of either party," than the factual issues must be resolved by us in a trial on the merits. *Id.* at 250, 106 S.Ct. 2505. Stated differently, the nonmovant here, Ryste, will get, and is entitled to, the benefit of inferences in its favor regarding questions of fact. This does not mean, however, that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is sufficient to defeat a proper summary judgment motion. *Id.* at 252, 106 S.Ct. 2505.

The Supreme Court stated that the inquiry is—respecting the consideration of a motion for summary judgment—"whether the evidence presents a sufficient disagreement to require submission to ... [the fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

"[A]fter the moving party has met its burden of coming forward with proof of the *absence* of any genuine issues of material fact," the party opposing such must respond, and may not do so simply "by reference only to its pleadings." *Celotex*, 477 U.S. at 322, 325, 106 S.Ct. 2548 (citation omitted) (emphasis added). In this shifting of the burden, the nonmoving party, however, is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324, 106 S.Ct. 2548. Acceptable forms of evidence to rebut a summary judgment motion include, *inter alia,* depositions, answers to interrogatories, admissions, affidavits, and various pleadings which point to the existence of genuine issues of material fact. *Id.* We note that defendant's burden of proving the negative in order to shift the burden to plaintiff, *i.e.,* showing the absence of evidence supporting Ryste's claim, is a difficult endeavor, indeed, and one which it has failed to meet, *infra.*

While "[t]he grant of summary judgment where a trial would be fruitless and the moving party is *clearly* entitled to judgment as a matter of law serves an exemplary role in the judicial process.... [it] can be harsh in its finality ... [and] *its application must be accompanied by great care....*" *Yuba Goldfields, Inc. v. U.S.*, 723 F.2d 884, 891 (Fed.Cir.1983) (emphasis added). Accordingly, in evaluating the propriety of a summary judgment motion, "we must exercise our discretion to achieve the quickest, fairest, and least expensive disposition of this matter for all concerned, including the parties, this court, and the litigants in other cases on our docket." *Youngdale & Sons v. United States*, 22 Cl.Ct. 345, 347 (1991). Moreover, "[a] *court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation.*" *Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir.1975) (emphasis added). With these standards in mind, the court now turns

to the parties' filings, which are the basis for our ultimate decision herein.

## II.

Defendant states, in its June 13, 2001 filing, that plaintiff will not be able to make out a prima facie case for any of its claims, including plaintiff's: (i) claims for unabsorbed overhead; (ii) claims for equitable adjustment regarding labor inefficiencies and increased direct costs; and (iii) claim preparation costs. While defendant's papers indicate circumstances which tend to show that plaintiff will have difficulty proving certain aspects of its case, defendant's filing by no means conclusively establishes that there are no genuine issues of material fact. Actually, defendant itself highlights relevant material issues that appear to be in dispute.

For example, defendant states:

... Although R & R [plaintiff] contends that the Government issued defective designs and delayed approving material submittals and responding to requests for information, the Government never issued a stop work order on this contract. Indeed, the daily job reports indicate that R & R was always working on this project. Likewise, in response to interrogatories, R & R admitted that the allegedly defective specifications impacted *only a portion of the renovation work* and stated that it was able to " 'work around' the areas (corridors) affected by *the defective drawings and specifications*." Similarly, R & R's foreman testified that the alleged defective specifications did not interrupt *all the work at the construction site*. Thus, R & R was always able to work and receive income from this job to which it could allocate its overhead.

Indeed, R & R consistently submitted progress bills, and received several contract modification [sic] that increased the price of the contract by $295,233. Accordingly, R & R *cannot demonstrate that there was any disruption in its stream of income from the project*.

Def.'s Stat. Reg. Its Intent To File Mot. For Summ. J., at 4 (emphasis added) (citations and footnote omitted).

By its very language, and taking the evidence in a light most favorable to plaintiff, the passage above even indicates that there are genuine material issues of fact in dispute. That even portions of the work were delayed, which *may* have unfairly caused an increase in costs to plaintiff, shows that the parties have fundamental and material differences of opinion regarding what happened, and why, during the performance of the contract. Defendant tells us, by this passage, that the parties clearly disagree as to the impact of the government's design defects and that they also disagree as to how much of the work was delayed because of the government's actions. These are issues of material and relevant fact(s) to plaintiff's case, and, as indicated by defendant itself, they clearly appear to be in dispute. Such close factual issues compel a vigorous fact determination in a trial on the merits.

By further example, defendant states in its papers that plaintiff failed to cooperate with the government's auditors and that, therefore, it should be precluded from introducing evidence contradicting the government's audit. Defendant, however, failed to proffer any probative evidence which conclusively, or even persuasively, shows that plaintiff did, indeed, impede the audit. This question is a material and disputed fact issue which can only be properly addressed in a trial on the merits, whereupon the court can make a factual determination regarding plaintiff's compliance with the government's audit and what the necessary sanction, *i.e.,* preclusion or otherwise, should be. There are other examples of genuine issues of material fact illustrated in defendant's papers, which, for brevity reasons, we will not fully ventilate.

Plaintiff, in its response to defendant's contentions, has indicated the existence of a number of material factual issues in dispute regarding this matter. For example, plaintiff contends that it incurred $9,600 in consulting costs in order to prepare the REA. Defendant terms these costs as 'claim preparation costs' and states that, as such, said costs are not recoverable under the relevant regulations. 48 C.F.R. § 31.205.47(f). On the other hand, plaintiff characterizes these costs as 'professional and consultant costs'

and, thus, are allegedly allowable. So styled, this obviously raises a genuine and material factual issue that is in dispute between the parties. There is no way for the court to determine, without making findings of fact, whether one side or the other is correct. As such, the inference as to this disputed issue must be resolved in the plaintiff's favor. In fact, we are compelled to do so inasmuch as it is the nonmovant in a summary judgment proceeding. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. In fact, we are compelled to hold as such. There are other examples of genuine issues of material fact indicated by plaintiff in its response, but the court, given the foregoing, sees no need to ventilate such herein.

Furthermore, the court notes that one of defendant's counterclaims is not merely a set-off claim, which would be rendered moot upon a dismissal of the complaint, but rather it appears to be a substantive and related counterclaim which would probably survive dismissal of plaintiff's complaint if the court were to so rule. *SCM Corporation v. United States,* 219 Ct.Cl. 459, 595 F.2d 595, 598–99 (1979). Therefore, any summary judgment motion filed by defendant would not be dispositive of all of the issues in this case and, thus, it would only be a motion for *partial* summary judgment. This is so despite defendant's statement at the status conference that it would "walk away" from the related counterclaim if it were granted summary relief because plaintiff is 'financially defunct.' *Supra* at 87.

■ Notwithstanding the foregoing, "[e]ven where the summary judgment criteria appear to be satisfied ... the Court may [nevertheless] deny [partial] summary judgment as *a matter of discretion,*" in shaping a case for trial. *Toyoshima Corporation v. General Footwear,* 88 F.R.D. 559, 560 (S.D.N.Y.1980) (citation omitted) (emphasis added). Similarly, "partial summary judgment is properly withheld where, on the basis of the cold record, a considerable expenditure of judicial time and effort will be required to sift out and piece together the undisputed facts essential to a summary judgment." *Id.* (citation omitted). In a complex fact-intensive case, such as the instant matter, a court has discretion to deny a partial summary judgment, even if such is justified, in order to proceed more efficiently and more expeditiously with a definitive resolution. *Powell,* 506 F.2d at 765. Moreover, "precipitous grants of summary judgment" should be avoided in a matter with a "fact-intensive nature." *Yuba,* 723 F.2d at 887.

■ As the court has determined that this matter is complex and highly fact-intensive, we hold that there is a high probability that the parties' filings in a prospective summary judgment proceeding would indicate that there are, indeed, genuine issues of material fact in dispute. Moreover, these factual disputes, as we stated earlier, appear to be close questions, which would be impractical and inappropriate for the court to resolve on papers alone. Additionally, defendant has failed to show us that plaintiff will be unable to prove its case, *i.e.,* that the government caused delays unfairly costing plaintiff time and money. Such close questions of fact in a summary judgment motion must be decided in the nonmovant's favor. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. In light of this important point, and the established fact that a "trial court may ... deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial [on the merits]," the court hereby DENIES defendant's request. *Id.* at 255, 106 S.Ct. 2505.

## CONCLUSION

Given all of the foregoing, defendant's request to file a summary judgment motion pursuant to RCFC 56 is hereby DENIED.

Inasmuch as discovery has now been completed, the following Appendix G schedule is hereby implemented:

1. The parties shall comply with paragraph 10 of Section V of Appendix G by September 20, 2001.

2. Plaintiff shall comply with paragraphs 11–13 * of Section V of Appendix G on or before October 5, 2001.

* Witnesses shall be characterized as fact, expert, or fact/expert.

 

3. Defendant shall comply with paragraphs 11–13 * of Section V of Appendix G on or before October 29, 2001.

4. The parties are not required to file proposed findings of fact (paragraphs 11(a) and 11(b)).

5. The parties shall comply with paragraphs 14–15 of Section V of Appendix G on or before October 29, 2001.

As to paragraph 14 (Stipulations), the joint memorandum shall be in two parts:

a. The first part shall contain separately numbered paragraphs covering all matters to which the parties have stipulated during the course of the proceedings. The stipulations must be comprehensive and the fact that any matter may have been established during discovery by admission or otherwise is not grounds for omitting it from stipulation. A party may not refuse to stipulate as to the content or purport of a document simply by claiming that the document is not the best evidence of its content. Nor is the fact that a party deems a fact irrelevant a sufficient basis for refusing to stipulate to its existence. Relevance may be argued in the Memorandum of Contentions of Fact and Law.

b. The second part of the memorandum shall set forth any matters a party proposes to be stipulated, as to which the parties have failed to reach agreement, and which the proponent of the stipulation believes are not reasonably subject to dispute. Each such proposed stipulation shall be set forth in full, together with the reasons the proponent believes the matter is not subject to dispute. The opposing party must explain beneath why and to what extent it believes the matter to be in dispute.

6. If contemplated, the parties shall comply with paragraph 16 of Section V of Appendix G on or before October 29, 2001.

7. The pretrial conference shall be held at 2:00 p.m. on November 19, 2001, at the Howard T. Markey National Courts Building, 717 Madison Place, N.W., Washington, D.C. 20005. The exact courtroom location will be posted in the lobby at that time. The trial date and location will be set that this conference.

IT IS SO ORDERED.